WIRT ADAMS, STATE REVENUE AGENT, *v.* JNO. M. LEE ET AL.

72 281
f77 468

1. PUBLIC FUNDS. *Loss of by officer. Liability. Excuse.*

Public officers are insurers of the safety of public money coming into their hands by virtue of their office, and are liable, in all cases, for its loss, unless caused by the act of God or the public enemy. *Griffin* v. *Levee Commissioners*, 71 Miss., 767.

2. SAME. *City tax collector. Deposit in bank. Orders ultra vires.*

A city tax collector, under legal duty to pay over taxes to the treasurer, is not relieved of liability on his bond for funds lost through failure of a bank in which he had deposited them for safe keeping, though, when ready to pay over the money, he had been notified, in writing, by the mayor and finance committee of the city council, the number of the latter being a majority of the council, to withhold the money, and deposit it at the city's risk, it appearing that the charter committed to the *council* to prescribe the duties of all officers, and that there was no ordinance authorizing such action by the mayor and finance committee.

FROM the circuit court of Washington county.

HON. R. W. WILLIAMSON, Judge.

The facts are stated in the opinion.

*James R. Yerger*, for appellant.

The fact that the money was lost through no fault of the collector, but through the failure of the bank, is no defense. *Griffin* v. *Levee Commissioners*, 71 Miss., 767.

The paper signed by the mayor and finance committee conferred no authority, and the agreement to release the collector from liability was a nullity. They could not act except in council, and the release does not purport to have been executed by the council. The tax collector, relying on it, acted at his peril. 15 Am. & Eng. Enc. L., 1028.

*Thomas & Griffin,* for appellee.

While the duties of the finance committee are not specified, it must be presumed that it had authority to act in all matters concerning the city's interest between the regular sessions of the council. The committee was the constituted agent of the city in respect to its finances. It commanded Lee, at his peril, not to pay the money over, and it must be assumed, from the record, that it was acting for the best interest of the city. If Lee had disregarded this command, and the money had been lost in consequence of the payment, could either he or his sureties be heard to deny their liability? He acted as any prudent man would have done in applying to the mayor and finance committee for instructions as to the disposition of the funds.

Aware of the view announced in *Griffin* v. *Levee Commissioners, supra,* we yet submit that the true view is that expressed in Mechem on Officers, § 301, and cases cited, and we ask the court to relax the rigorous rule it has announced.

COOPER, C. J., delivered the opinion of the court.

The appellant, who is the revenue agent of the state, brought this action for the use of the city of Greenville against John M. Lee, the tax collector of that city, and against the sureties on his official bond, to recover the sum of $3,373.86, with interest thereon, which, it is alleged, the said Lee received into his hands as tax collector in the year 1891 and failed to pay over to the treasurer of said city, as it was by law his duty to do.

The defendants pleaded to the declaration, but, by agreement between the parties, all the pleas were withdrawn, and the cause was submitted to the judge (a jury being waived) upon an agreed statement of facts, and it was stipulated that if the agreed facts constituted a defense, judgment should go for the defendants, but if, on the other hand, no sufficient defense was shown, then judgment should be rendered for the plaintiff, all objections to the form of the declaration and of the right of the revenue agent to sue being waived.

By the agreement it is admitted that Lee was the duly elected collector, and, as such, gave the bond sued on with the other appellees as his sureties; that the sum named in the declaration was collected by Lee and never in fact paid into the city treasury; that one Moore was the duly elected, qualified and acting treasurer of the town; that J. H. Wynn was the duly elected, qualified and acting mayor, and John P. Finley, O. M. Blanton and W. E. Hunt were duly elected, qualified and acting councilmen, and constituted a majority of the members of the council, and that said Finley, Blanton and Hunt had been duly appointed as the finance committee of said council; that Lee paid into the city treasury all money collected by him except the money now sued for, and would have paid in that sum but for the following facts: After he had collected the said money, he was notified by the sureties upon the official bond of Moore not to pay to him any further sums, and at the same time the said Wynn, mayor of the city, and the said Finley, Blanton and Hunt, constituting a majority of the city council, and constituting the finance committee of the city, in their official capacities as councilmen and financial committee of the said city, ordered said Lee not to pay to said Moore. the sum of money then in his hands, but that nothing appears on the minutes of the city council showing these things to have been done; that Lee, desirous of relieving himself from responsibility for the money then in his hands, and willing to pay the same to the treasurer, or as said officials should direct, applied to Wynn, mayor, and to Finley, Blanton and Hunt for direction as to the disposition he should make of said money, and reported that he then had in hand $7,539.12 of the money of the city, which amount he had deposited for safe keeping in the following banks in the city of Greenville, viz.: In the Merchants & Planters' Bank, $1,780.95; Citizens' Bank, $930.85; First National Bank, $1,420.05; Bank of Greenville, $3,407.29, all of which banks were then considered solvent and safe places of deposit; that the said Wynn, in his official capacity as mayor,

and the said Finley, Blanton and Hunt, in their official positions as councilmen and constituting the said financial committee of said city, duly intrusted with the management of its finances as aforesaid, then and there instructed the said Lee, as tax collector, not to pay over the said sums of money to the said Moore, as treasurer of said city, at his peril, but to leave the same upon deposit in said banks, and that he, the said Lee, as tax collector, and the sureties upon his official bond, should be relieved of all responsibility for said funds.

The funds deposited in the banks other than the Bank of Greenville were subsequently paid into the treasury; but, on the twenty-third day of December, 1891, the Bank of Greenville suspended payment, and the amount of money sued for in this action was lost. Lee had no reason to suspect the solvency of the bank, and the money was deposited therein by him for safe-keeping. With the agreement of facts the defendants filed a written instrument, which, after reciting the fact that the money in the hands of Lee was on deposit in the banks, as above stated, proceeds:

"And, whereas, said John M. Lee says he is ready and offers to turn over said amounts to the treasurer (?) of said city of Greenville, now, we, J. H. Wynn, mayor, and J. P. Finley, O. M. Blanton and W. E. Hunt, councilmen and members of the finance committee of said city of Greenville, desire that said Lee do not turn over said money to the treasurer, and do hereby authorize him to retain possession of the same until we make demand for it. The object of this instrument is to relieve said Lee and his bondsmen of responsibility only in the event of the failure of any or all of said depositories during the existence of this trust.

"W. E. HUNT,
"JOHN P. FINLEY,
"O. M. BLANTON,

"J. H. WYNN, *Mayor.*                    *Finance Committee.*"

The order appointing the finance committee, as shown by the minutes of the council, is as follows:

" The mayor appointed the following standing committee:

"*Finance.*—W. E. Hunt, John P. Finley and O. M. Blanton."

The condition of the bond of Lee as tax collector is that he " shall well and truly pay into the city treasury all moneys coming into his hands as tax collector, and shall faithfully discharge all other duties required of him."

By the charter of the city the council is composed of the mayor and six councilmen. By the fifth section of the charter it is provided that the " mayor shall preside at all meetings of the council, and have a casting vote and no other, and in case of his nonattendance upon the meeting of the council, the council shall appoint one of their number chairman *pro tem.*"

Section 6 is as follows: " That the mayor shall, at all times, be active and vigilant in enforcing the laws and ordinances of the city, and it is hereby made expressly his duty to inspect the conduct of all subordinate officers of the city, and to give notice of their negligence or violation of duty to the council, and to communicate, in writing, to the council such information, and recommend all such measures as in his opinion may tend to the improvement of the finance, the police, the health, security or comfort of the city; and the council shall have full power to enact all ordinances necessary to carry out such recommendations."

" Section 37. That the city council shall have power to define the powers and duties of all city officers. . . The said city council may also provide for removing any city officer from his office for cause, the accused being first furnished with the charges against him, and being heard, if required, in his defense."

By section 35 it is provided that the council shall biennially elect a treasurer, collector, marshal, and attorney.

The questions presented by the record are two: (1) Was the

tax collector discharged from liability by reason of the mere
fact of his having deposited the money of the city in a bank of
good credit, where it was lost without his fault? (2) If this
be decided against the appellees, then the question is whether
the collector is discharged by reason of the action of the mayor
and finance committee of the city.

But little need be said upon either question. The decisions
upon the first question are conflicting, but the better view, in
our opinion, is that public officers are insurers instead of bailees
of the funds which come into their hands by virtue of their
office, and are absolutely responsible unless excused by the act
of God or the public enemy. The conflicting authorities are
noted in Throop on Pub. Officers, 238 *et seq.* In this state the
question has recently been decided. *Griffin* v. *Levee Commis-
sioners,* 71 Miss., 767.

It does not appear in the charter of the city, nor is it shown
by any ordinance of the council, that authority was given to
the mayor and finance committee to interpose either to prevent
the payment of the funds of the city by the collector into the
hands of the treasurer, or to permit him to retain the fund on
deposit in the banks at the risk of the public. By the charter
the council is made the representative body of the city, and by
its action alone could the city be bound. 1 Dillon on Mun.
Corp., § 220.

We are not called upon to decide whether, under the grant
of power to the council by the sixth and thirty-seventh sec-
tions of the charter, authority might have been given to the
mayor and the councilmen composing the finance committee to
interdict the payment by the collector to the treasurer, and to
direct the money to be left in the banks. It is sufficient to
say that no such authority was given, and that none existed.
The law pointed out to the collector what should be done with
the money, and neither the sureties on the treasurer's bond
nor the mayor and the finance committee of the city could law-
fully direct him differently. However solvent the banks may

have been, or may have been believed to be, there was no law and no ordinance of the city by which they were recognized as legal depositories of the public funds. The responsibility of the collector and the sureties upon his official bond is the security contemplated and provided by law for the safety of the public moneys. This security could not be waived, or something else substituted for it, unless by some authority clearly given by law. In the agreement of facts it is stated that "the said Wynn, in his official capacity as mayor, and the said Finley, Blanton and Hunt, in their official capacity as councilmen," etc., ordered the collector not to pay over the money to the treasurer, and directed it to be kept in the banks, and agreed to discharge the collector and his sureties from liability if it should be lost by reason of the insolvency of the banks. We do not understand that anything more is meant by this statement than that the mayor and councilmen professed and attempted to act officially, and did so act if, in the opinion of the court, they had authority so to do, for, of course, if the mayor and finance committee, having authority, executed the writing shown in the agreed facts, there is nothing in the case for decision. That this construction is the construction to be given to the agreement of facts is made evident by the further statement that nothing appears on the minutes of the council in reference thereto. We are therefore of opinion that the collector and the sureties on his bond are liable, and, under the agreement, a judgment will be entered accordingly.

*Reversed, and judgment here.*