ROBERTSON, REVENUE AGENT, *v.* BANK OF BATESVILLE ET AL.

[77 South. 318, Division B.]

1. DEPOSITORIES. *Effect of deposits. Ownership of funds.*

Funds paid by a county into a depository duly contracted with, are not funds of the county, and not trust funds, but become the funds of the depository bank.

2. DEPOSITORIES. *Actions against depositories. Cross-bills.*

Where the proceeds of a bond issue for the construction of bridges and roads, and the amount of *ad valorem* and commutation taxes were paid into one common fund under the direction of the county auditor, and warrants were paid by the county depository without keeping the accounts of the two funds separate, and the state revenue agent sued the depository for an accounting and a restoration of the road bond fund, a cross-bill by the de-

pository, asking that, if it should be held that it was not authorized to pay certain warrants from the proceeds of the bonds, it might be subrogated to the rights of the holders of such warrants and be allowed to collect the amount so paid from the road tax fund, was maintainable.

3. DEPOSITORIES. *Actions against. Doing equity.*

Where the revenue agent comes into equity and seeks equitable relief, he must be required to do equity, and the chancery court, in dealing with the matter, where the funds are commingled, will apply the funds as they ought to have been applied, applying to the bond funds such warrants as should properly have been paid from this fund, and allowing the depository to be subrogated to the rights of holders and to have funds paid in as *ad valorem* and road commutation funds applied to warrants which would have been paid out of such funds had the accounts been properly kept separate. If there should be any shortage in the road bond fund after so applying the warrants, then the judgment should be rendered to the amount of such funds so improperly paid out, and the revenue agent's commission should be limited to such amount as may be due by the depository after properly applying the warrants to the appropriate fund.

4. COUNTIES. *Actions by or against counties. Persons entitled to control.*

Since a county may sue through either the board of supervisors, the district attorney, the state revenue agent, or the attorney-general, the officer first instituting suit has the exclusive control thereof, if he acts in good faith and where the state revenue agent sued on behalf of the county, he represented the county in all phases of the litigation, and though not charged with the duty of defending suits against the county, was bound to conduct the litigation on behalf of the county as to any offset or counterclaim properly entertainable, unless the court authorized some other officer to appear and file appropriate pleadings necessary for the protection of the interest of the county.

5. COUNTIES. *Actions by or against counties. Persons entitled to control.*

In a suit by the revenue agent on behalf of the county against a county depository, which interposes a cross-bill, if the court thinks that the county's interest would be better conserved by permitting the attorneys for the board of supervisors to co-operate with the revenue agent, it may permit them to do so, but this authority must be exercised charily.

APPEAL from the chancery court of Panola county.
HON. J. G. McGowen, Chancellor.

Suit by Stokes Robertson, revenue agent, against the Bank of Batesville and others. From a judgment overruling a demurrer to a cross-bill, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Shands & Montgomery,* for appellant.

*Srone & Mayes, L. L. Pearson* and *L. B. Lamb,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The state revenue agent filed a bill in the chancery court of Panola county, alleging that the board of supervisors of Panola county, at its April, 1913, meeting, directed the clerk to give notice of the intention of the board to issue road bonds to the amount of fifty thousand dollars for the purpose of building bridges and constructing roads in the county. After notice by publication, and at the next meeting of the board of supervisors, an order was entered upon the minutes for the issuance of fifty thousand dollars of the bonds of the county for the purposes mentioned. At an adjourned meeting held on the 21st day of May, 1913, the bonds were sold to John Nuveen & Co., of Chicago, for the sum of fifty thousand, five-hundred and ten dollars and accrued interest. The Bank of Batesville was at the January, 1913, meeting of the board of supervisors designated the county depository for Panola county, and qualified as such by giving bonds. The bonds sold to Nuveen & Co., were paid for in installments as follows: The first installment of ten thousand dollars delivered August 13, 1913, twenty thousand dollars delivered August 28, 1913, and twenty thousand dollars September 3, 1913. The chancery clerk issued a receive warrant authorizing the depository to receive this money and place to the road fund account of

the county, and these bond funds were entered upon the account books of the county and of the depository as road funds. Prior to the April, 1913, meeting, at which notice by the board of the issuance of the bonds was given, the county had issued and had outstanding something over thirteen thousand dollars in warrants for the working of the roads and building of bridges, and after said date continued to issue warrants for work done on the roads and bridges from time to time. After the funds for the bonds were paid into the treasury, these warrants for road and bridge construction were presented to the depository for payment and were paid out of the said fund. The county in addition to the sale of bonds to the amount of fifty thousand dollars, collected an *ad valorem* tax of three mills, which, under the pleadings, amounted to between eighteen thousand dollars, and twenty thousand dollars, and a road commutation or *per capita* tax aggregating, according to the pleadings, approximately fifteen thousand dollars. These taxes were paid into the depository as road funds, and warrants presented for payment absorbed these funds. When the depository made its quarterly report the first Monday of October, 1913, it showed only a small amount of the bond money on hand; this amount being between four hundred dollars and five hundred dollars then unexpended and the balance having been expended in payment of warrants, as above stated. The revenue agent filed a bill in which he alleged that the bonds had been issued, the money received by the depository, and that the money was not on deposit and had been expended, that the books of the county and of the bank or depository did not show the disposition of these road bond funds, alleging that it had been misappropriated and wrongfully applied in payment of other accounts not properly chargeable against this road bond fund, and prayed for a discovery from the depository of the disposition of such funds and the amounts disposed of, praying that, after an accounting, judgment should be rendered in

favor of the revenue agent, suing for the county, for the restoration of this fund. The depository filed an answer and cross-bill, setting out that it had received the fifty thousand, five hundred and ten dollars from the clerk on receive warrants on account of the road fund, and attached a detailed statement of warrants paid out of this fund, embracing the warrants outstanding prior to the notice to issue bonds and prior to the receipt of the funds for the bonds by the depository; said warrants having been drawn upon the road fund. It alleged that, under the law, when it received the funds, they became the funds of the bank, and that its obligation was not to keep the money in kind and in separate funds, but that its obligation was to pay said money out on warrants issued against it by the proper officers of the county, and prayed that, if the lower court should decide that it was not authorized to pay the warrants outstanding at the time of the order for the issuance of the bonds, or at the time of the receipt of the bond funds, then that it be subrogated to the rights of the holders of such warrants and be allowed to collect from the county, from the *ad valorem* and *per capita* road taxes fund, the amounts paid out of the road bond fund.

The revenue agent demurred to the cross-bill, contending that there was no equity on the face of the cross-bill, that the revenue agent was charged with a special statutory duty, that the depository was not entitled in this suit to offset the demand of the revenue agent, and that the revenue agent was limited to bringing suits, and not to defending suits and cross-demands. The court overruled the demurrer. Certain attorneys appeared and asked, in the name of the county, to intervene as parties to the suit, signing the motion by their firm name, as county attorneys. The motion does not disclose whether the firm of attorneys were employed by the board of supervisors, or in what manner or under what authority they represented the county. The court sustained the

motion for intervention, and granted an appeal to settle the principles of the case.

This court has decided that funds paid by the county into a depository duly contracted with are not funds of the county, and not trust funds, but become the funds of the bank. See *Potter* v. *Fidelity & Deposit Co.,* 101 Miss. 823, 58 So. 713; *Board* v. *Powell,* 109 Miss. 154, 68 So. 71. A depository is charged with certain duties of making reports and keeping accounts, and is charged with paying warrants properly drawn upon the funds of the county. Before they can be paid into the treasury the clerk must issue a pay or receive warrant, specifying the account to which the money is to be paid. This receive warrant is carried to the treasurer, and the treasurer—or the depository in lieu thereof—issues a receipt. Thereupon the county auditor enters the account on the books kept by him under the statute on behalf of the county against each officer. Section 352, Code of 1906 (Hemingway's Code, section 3725), provides:

"It shall be the duty of the county auditor to issue his receipt warrant to any person desiring to pay money into the county treasury, specifying the amount and the particular account on which such payment is to be made, and the fund to which it belongs; but a receipt warrant shall not be credited to the person making such payment, nor be charged to the county treasurer, until there shall be produced and filed with such auditor a duplicate receipt, signed by the treasurer, for the sum specified in such receipt warrant."

By section 351, Code of 1906 (Hemingway's Code, section 3724), the auditor is required to keep a suitable book in which he shall enter the accounts of officers whose duty it is to receive or collect money for the county, exhibiting the debits and credits and what they represent, whether money, warrants, or bonds, and whether belonging to the general or any special fund, and that such books shall be at all times subject to the inspection of any citizen of the county. It seems, then, that under

the statute the county auditor is charged with the duty of determining into what fund money paid into the county treasury shall be paid. We do not believe that the county depository is authorized to supervise the auditor in his duties, and we do not think that the depository is chargeable with the mistakes of the county officers in determining to what fund certain moneys belong. The depository would have to have actual knowledge that the county auditor had placed money to the credit of the wrong fund to make it liable.

However this may be, we think in the present case that all of the moneys, both for bonds and for *ad valorem* and commutation taxes were paid into one common fund under the direction of the county auditor; that the cross-bill of the depository is maintainable, and conceding that the road bond fund is a special fund, and ought to be kept separate from the *ad valorem* and commutation tax fund, and that the funds of the road bonds cannot be used to pay past indebtedness, still the revenue agent, coming into equity and seeking equitable relief, must be required to do equity, and the chancery court, in dealing with the matter, where the funds are commingled, will apply the funds as they ought to have been applied, applying to the bond funds such warrants as should properly have been paid from this fund, and allowing the depository to be subrogated to the rights of holders and to have funds paid in as *ad valorem* and road commutation funds applied to warrants which would have been paid out of such funds, had the accounts been properly kept separate. If there should be any shortage in the road bond fund after so applying the warrants, then the judgment should be rendered to the amount of such funds so improperly paid out, and the revenue agent's commission should be limited to such amount as may be due by the depository after properly applying the warrants to the appropriate fund.

In regard to the proposition of intervention, we find that the county may institute suit through at least four

different officers: The board of supervisors may sue for
the county; the district attorney may sue for the county;
the revenue agent may sue for the county; and the
attorney-general may sue for the county. The county
is an intangible and impalpable person, that can only
be represented by officers authorized by law. When sev-
eral different officers are given concurrent right to sue,
the officer first instituting suit has the exclusive control
of such suit, if he acts in good faith. The court, how-
ever, has power to see that the officer representing the
county acts in good faith, files appropriate pleas, and
is in duty bound to apply the law as it should be applied,
regardless of the contentions of either of the parties.
The revenue agent, having sued on behalf of the county,
represents the county, and is required to do the same
equity that would be required of the county if the suit was
maintained by any other officer or board authorized to
sue. While the revenue agent is not charged with the
duty of defending suits against counties, generally, yet
when he institutes suit he is charged with representing
the county in all phases of the litigation instituted by
him. If an offset or counterclaim of any kind is prop-
erly entertainable, he must conduct the litigation on be-
half of the county as to such cross demand or claim.
If the court should reach a conclusion that the revenue
agent, or any other officer clothed by law with authority
to represent the county, is not properly and in good faith
conducting the litigation for the interest of the county,
then the court may direct and control the proceedings,
and may authorize some other officer to appear and file
appropriate pleadings necessary for the protection of
the county interests.

In the present case the cross-bill by the bank sets up
all defenses that the attorneys claiming to represent the
county seem to desire presented, and the motion to inter-
vene was unnecessary. However, if the court thinks
that the county's interests would be better conserved
by permitting the attorneys for the board of supervisors

to co-operate with the revenue agent, it may permit them to do so; but, of course, this authority must be exercised charily. The judgment of the court is affirmed, and the cause remanded for further proceedings.

*Affirmed and remanded.*