MILLER, STATE TAX COLLECTOR, *v.* BATSON *et al.*

(In Banc. May 12, 1931.)

[134 So. 567. No. 29270.]

Chalmers Potter, of Jackson, for appellant.

H. H. Parker, of Lyman, U. B. Parker, of Wiggins, and J. A. Covington, Jr., of Meridian, for appellees.

**Anderson, J.,** delivered the opinion of the court.

Appellant brought this action in the circuit court of Stone county against the appellee, O. E. Batson, sheriff and tax collector of that county, and appellee United States Fidelity & Guaranty Company, as the surety on the tax collector's bond, to recover the sum of fifty thousand dollars, public funds belonging to said county, and the statutory penalty of thirty per cent thereon for withholding the same; and, in addition, appellant's statutory commission thereon, of twenty per cent, which funds had been by Batson, as sheriff and tax collector, deposited in the Citizens' Bank of McHenry, which bank had failed and gone out of business. The ground upon which recovery was sought is that the Citizens' Bank of McHenry, when the funds were deposited therein, was not a legal depository, and therefore Batson, as such sheriff and tax collector, became and was an insurer of said funds, and liable therefor on his official bond.

A final judgment for appellees was rendered on the pleadings, from which appellant prosecutes this appeal.

To the declaration appellees interposed two special pleas, in the first of which he set up substantially the following facts: That appellee Batson, in depositing public funds in his hands as sheriff and tax collector, acted as a ministerial officer, and had no connection with, or control over, the judicial action of the board of supervisors in the selection of the Citizen's Bank of McHenry as a depository of the county; that it became and was his duty, as such ministerial officer, to report all collections of public funds to the county auditor, and to obey the pay warrants issued to him by such auditor; that prior to the deposit of the funds sued for in the Citizens' Bank of McHenry, the board of supervisors, in the exercise of it judicial functions, selected and designated that bank as the county depository; that thereafter the county auditor, obeying the order of the board of super-

visors, issued pay warrants to the sheriff and tax collector, requiring him to pay the public funds in his hands into the depository, the command in which pay warrants he always obeyed; that all such pay warrants were regular in form, and the sheriff and tax collector had no notice that the Citizens' Bank of McHenry was not a legal depository.

Perhaps it would be better to set out the material allegations of appellees' second plea, instead of undertaking to set out its substance: "That the plaintiff should not have and recover of and from this defendant in manner and form alleged in his declaration, for the reason that the board of supervisors of Stone county, Mississippi, by virtue of the laws of the state of Mississippi, were vested with full and complete jurisdiction over the selection of a county depository for Stone county, Mississippi, and by their order duly spread upon their minutes at the January, 1928, 1929 and 1930 meeting of said board, they selected, designated and elected the Citizens' Bank of McHenry as county depository for Stone county, Mississippi, as will appear from copies of said orders hereto attached marked Exhibits 'A,' 'B' and 'C' hereto; that, thereafter, said board of supervisors charged said bank and accepted pay from said Citizens' Bank of McHenry for the privilege of keeping the county funds of said county, in accordance with his bid and the order of said board designating it as depository, which amounts were by the said bank paid and by said board of supervisors received as compensation for the said bank's acting as county depository for said county; that said Citizens' Bank of McHenry was in charge and possession of the office, or quasi office, of county depository for Stone county, Mississippi, discharging its functions as such; made monthly reports as county depository of said Stone county to the said board of supervisors of said county, as required by law; that the said board of supervisors accepted and approved said re-

ports of its said county depository; that said bank likewise made its quarterly reports to said board of supervisors of said Stone county as county depository; that thereafter said board of supervisors accepted and approved quarterly reports of said Citizens' Bank of McHenry as county depository of Stone county, Mississippi; that the said board of supervisors and the chancery clerk, who is also the clerk of the said board of supervisors, and county auditor, recognized the said Citizens' Bank of McHenry as the Stone county depository, held the same out to the public and this defendant as such and required this defendant to deposit its funds therein; repeatedly issued warrants against funds held by said bank as such depository; that the public generally understood that said Citizens' Bank of McHenry was the county depository for said county; that it was so treated by the officers of Stone county, by the officials of the state of Mississippi, and by the public generally, and irrespective of whether or not the said bank had in fact filed a bond or received a commission, as such county depository, this defendant and the public had no notice that said bank had filed no bond, and it was by reason of its said acts, and the acts of the officers by law required to pass on its qualifications, so held out as such depository, and the said bank was the de facto depository of Stone county, Mississippi, with whom this defendant as tax collector of Stone county dealt, and deposited public funds therein, believing it to be the county depository, duly qualified, without any knowledge of the failure of said bank to file a bond; that this defendant is, therefore, protected by reason of the fact that the acts of the said Citizens' Bank of McHenry, in receiving funds from this defendant as tax collector, and the acts of the board of supervisors of Stone county, and the county auditor, receipting therefor, were in fact as effective and binding as if said Citizens' Bank of McHenry had filed a bond. There-

fore, this defendant is not liable for any funds deposited in and held by said bank, as alleged in plaintiff's declaration, and plaintiff should have and recover nothing in this, its suit against this defendant. All of which he is ready to verify.''

The orders of the board of supervisors selecting the Citizens' Bank of McHenry as the county depository for the years 1928, 1929, and 1930, which were made Exhibits A, B, and C to the second special plea, are in substantially the same language except as to the year. The order for 1928 follows:

''The matter of designating a depository for the funds of Stone county, Mississippi, for the year 1928, coming on for consideration, and it appearing to this board that there are two bids on file for the keeping of said funds, that of the Citizens' Bank of McHenry, Mississippi, proposing to pay two per cent interest per annum on daily balances, including the account of the tax collector, and that of the Bank of Wiggins, Wiggins, Mississippi, proposing to pay two per cent interest per annum on daily balances, and it appearing to the board that both bids are equal;

''It is therefore ordered that the Citizens' Bank of McHenry, and the Bank of Wiggins be, and they are both hereby designated as depositories for the year 1928, interest to be paid to the county, as per their bids, and their commissions are directed to be issued as is required by law.

''It is further ordered that all funds of the county including the tax collector's account are to be cleared through the Citizens' Bank of McHenry, and that when and as often as the tax collector makes his report of funds collected, and there is a deposit made, the Citizens' Bank of McHenry is hereby directed to then and there turn over to the Bank of Wiggins fifty per cent of said fund.

"It is further ordered that all warrants are to be drawn on Citizens' Bank of McHenry and that as the account decreases during the year then the Bank of Wiggins, as county depository is hereby directed to turn over to said Citizens' Bank of McHenry by the warrant of the clerk of the board of supervisors, funds belonging to the county, when called for by said Citizens' Bank of McHenry, in order to at all times keep the funds of the county that are deposited in both banks as near equal as possible.

"The matter of fixing the bonds of the county depositories of Stone county for the year 1928, coming on for consideration, it is ordered that said banks designated as county depositories for Stone county for the year 1928 be, and they are hereby directed to file with the clerk of this board of supervisors of Stone county, Mississippi, as security, as such surety bonds, certificates of indebtedness or other securities as is required by law, with such assignments to the county of Stone of such certificates of indebtedness, bonds, etc., as is necessary.

"It is further ordered that from time to time as the balances of the county funds on deposit in the county depositories shall decrease, the clerk of this board is hereby directed or authorized to surrender to said depositories said certificates of indebtedness, or other securities, in lots of five thousand dollars each, provided that at no time the total certificates of indebtedness, bonds or other securities be less than ten per cent more than the total amount of funds belonging to the county on deposit at said depositories."

Appellant demurred to the special pleas, on the ground that they were insufficient in law. The demurrer was overruled, and, appellant declining to plead further, a final judgment was rendered in appellees' favor. It is from that judgment this appeal is prosecuted.

It is conceded by appellees that the Citizens' Bank of McHenry was not a legal depository for Stone county for the years 1928, 1929, and 1930, being the years during

which the public funds sued for were deposited therein by appellee Batson, as sheriff and tax collector of the county. The bank was not a legal depository, because it failed to put up the security required by the statute, and no commission had been issued to it as such depository, as provided by law.

The appellant contends that under the law the sheriff and tax collector, in paying the funds in his hands into the bank, did so at the peril of the bank being a legal depository, and, the bank not being a legal depository, he was an insurer of such funds. On the other hand, the appellees contend, and the trial court took that view, that the bank having been recognized by all the public authorities as the county depository, and having acted as such, it was a de facto depository, and the sheriff and tax collector, having no knowledge of its illegal selection, was protected in his dealings with it.

The pertinent provisions of the Code chapter on depositories are as follows, being the same in the Code of 1930 as appeared in Hemingway's Code of 1927 (section 4739 et seq.):

Section 4340, Code of 1930, provides for the establishment of county depositories. Section 4341 provides for the publication of bids from banks for the privilege of acting as depositories. Section 4342 provides that, where no bids are submitted, the board of supervisors shall readvertise for bids. Section 4343 provides that, where no bank in the county bids, there shall be a readvertisement by the board in adjoining counties and in a daily newspaper published at the capital of the state. Section 4344 provides that the state treasurer shall aid the board of supervisors in the selection of a depository. Section 4345 provides a penalty for obstructing bids of proposed depositories. Section 4346 provides how a bank may qualify as a county depository; it requires that the bank shall put up as security for the public funds deposited with it registered bonds of the state, Yazoo & Mississippi delta levee district bonds, Mississippi levee

district bonds, county and municipal bonds of counties and municipalities of this state, state of Louisiana bonds, bonds of the city of New Orleans and state of Louisiana levee bonds, United States bonds, Mississippi drainage district bonds, bonds of any consolidated school district or road district in this state, certificates of indebtedness and notes of this state, which bonds, notes, and certificates are legal, or surety bond of any surety company authorized to do business in this state, in an amount ten per cent greater than the maximum amount of the public funds. Section 4347 provides that, when a bank is selected as a county depository, the president and clerk of the board of supervisors shall issue to such depository a commission; and section 4348 prescribes the form of the commission. Section 4349 forbids that, when any payment of county funds shall be made into a county depository, the county depository shall give receipts in triplicate to the person making such payment, specifying the authority under which the payment is made, one of which shall be immediately mailed to the county auditor, and that any person paying money into a county depository shall, before paying the same, receive a pay warrant from the county auditor allowing him to make such deposit; and that no depository shall receive any funds unaccompanied by such pay warrant. Section 4350 requires that every county depository shall, at the regular January, July, and October meetings of the board of supervisors of the county, and at such other times as the board may require, make to the board a detailed report of all money received by it, and the disbursements therefor, so that such receipts and disbursements shall clearly and distinctly appear, and shall exhibit with its report the vouchers for the disbursements charged therein, etc. Section 4351 provides that, in making his settlements, the sheriff and tax collector shall pay the amount due the county to the county depository according to law "and the rules of the board of supervisors," and in making deposits he shall receive duplicate receipts for the

same, and shall mail one to the clerk or the county auditor, and the depository, upon demand, shall issue its official receipt therefor.

The original of the present section 135 of the constitution provided, among other things, that there should be selected for each county in the state a treasurer. The 1924 amendment of that section of the constitution abolished the office of county treasurer. The section, as amended, provides that "the duties heretofore imposed on the county treasurer shall be discharged by some person or persons selected as required by law." The County Depository Statute was authorized by that amendment. The result is that the county depositories, in a very large measure, take the place of the county treasurers, and perform the duties theretofore performed by them. It is true that a county depository is not a public officer in the sense of the constitution, still it is a quasi-public officer. In Perkins v. State, 130 Miss. 512, 94 So. 460, 463, the bank had not been legally selected as a municipal depository; it had no right to act as such. The sureties on the bank's depository bond sought to escape liability because the bank was not a legal depository. In discussing the question, among other things, the court said:

"Under our laws a municipal depository is a quasi-public officer. In a very large sense it is treasurer of the municipality. Through it the funds of the municipality are preserved and disbursed. Therefore its depository bond may be likened in its purpose and effect to bonds of public officers. Sureties on official bonds are estopped from denying liability thereon where such bonds have accomplished the purpose for which they were executed.

"The depository bonds here in question accomplished the effect of their execution and acceptance. By virtue thereof the Bank of Commerce actually became the depository of the city of Gulfport, and was treated and dealt with as such by the city. The bank received the consideration for the execution of the bonds—the munic-

ipal deposits—and this consideration moving to the bank was sufficient to bind the sureties. These depository bonds, so far as the sureties thereon are concerned, are to be treated in every respect as if they were legal.''

In State of Kansas v. U. S. Fidelity & Guaranty Co., 81 Kan. 660, 106 Pac. 1040, 26 L. R. A. (N. S.) 865, it was held that a bank selected as a state depository was the financial agent of the state, and a quasi-public official. In Board of Com'rs of St. Louis County v. American Loan & Trust Co., 75 Minn. 489, 78 N. W. 113, the court held that, where a bank had been selected, and acted, as a county depository, the sureties on its depository bond could not raise the question of the legality of its selection; that they were estopped to deny that the bank had been legally designated as a depository, upon the ground that it acted as a de facto depository.

State, Use of Bragg, v. Basham, 77 Miss. 688, 27 So. 996, 997, involved an analogous question. Basham, the appellee in that case, was sheriff of Monroe county. Bragg, the appellant, was convicted of a misdemeanor, and after conviction was turned over by the sheriff to the county convict contractor, and while in the custody of the latter was seriously wounded by an employee of the contractor. Bragg sought to hold the sheriff liable for the injury, upon the ground that there was no county convict contractor, because the person acting as such had failed to give the bond required by statute. The court held that nevertheless he was a de facto county contractor, and the sheriff was not liable for his tortuous act. The court used this language in that case:

''The county contractor is not like the sheriff and many other officers, required to execute bond 'before entering upon' the discharge of his duties. The board of supervisors contract with him, and look after his bond. ''This contractor had been appointed, claimed to be county contractor, was recognized and acting as such, and was dealt with as such by the sheriff. The sheriff was not required to see, under these circumstances, if at

all, that he had given bond; and the failure to execute the bond is the whole ground for attempting to hold the sheriff and his sureties liable for this outrageous tort of the county contractor's employee. He was at least de facto county contractor.''

Although a county depository is selected by contract with the board of supervisors, its duties and obligations are fixed, to a very large extent—almost exclusively—by the Depository Statute, as will be observed from the provisions of the statute above referred to in this opinion.

In McClure v. Whitney, 120 Miss. 350, 82 So. 259, the court said that the essential difference between an employment and an office is that in an office the duties and powers are prescribed by law, and in an employment the duties are prescribed by the contract of employment. The county depository has many of the elements of an office, instead of an employment. It is truly a quasi-public office.

In view of that status, was the sheriff and tax collector of Stone county entitled to invoke the principle of law applicable to officers de facto, namely, that the acts of a de facto officer are to be upheld as valid so far as they involve the interests of the public and of third persons?

In determining this question it might be well to consider what it takes to constitute a de facto officer. A person is a de facto officer who exercises the duties of the office which he professes to occupy: ''First. Without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be. Second. Under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like. Third. Under color of a known election or appointment, void because the officer was not eligible, or because there was

a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public. Fourth. Under color of an election or appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such." 22 R. C. L., page 558, paragraph 306.

And a mere usurper of an office, without any color of title whatever, who has for a considerable time exercised the powers thereof, with the acquiescence and recognition of the public authorities and the public is a de facto officer. 46 C. J., page 1058, paragraph 373.

The common-law rule is that the acts of such an officer are valid, so far as the interests of the public and of third persons are involved; and if an official person or body has authority to appoint to public office, and apparently exercises such authority, and the person appointed enters on and performs the duties of the office, his acts will be upheld in respect to the public which he represents, and third persons with whom he deals officially, notwithstanding there was a want of power to appoint him in the person or body which professed to do so. The practical effect of the rule is that there is no difference between the act of a de facto and a de jure officer, so far as the public and third persons are concerned. The principle is placed on the ground of public policy, and for the protection of those having official business to transact, and to prevent a failure of public justice. Third persons, from the nature of things, cannot always investigate the rights of one assuming and holding public office. 22 R. C. L., pages 601, 602, paragraph 324.

Our statute, section 2899 of the Code of 1930, providing that the acts of a public officer exercising the functions of the office are valid and binding as official acts in so far as they concern the public and third persons, is therefore only declaratory of the common law. Our court so held in Shelby v. Alcorn, 36 Miss. 273, 72 Am. Dec. 169.

We are unable to see why these principles of the common law should not apply with equal force to a quasi-public officer, especially where the duties and obligations of such quasi-public officer are as extensively fixed by law as the duties of county depositories are fixed by our statute. Such duties and obligations are public in their nature, not private. As stated, county depositories, to a very large extent, take the place of county treasurers. They are required to receive, safely keep, and disburse, according to law, the public funds of the county, and to make reports of such receipts and disbursements to the board of supervisors at stated times. The Citizens' Bank of McHenry, it is true, on account of its failure to put up the required security, and to receive a commission from the president or clerk of the board of supervisors, was not a legal depository of the county. Nevertheless, all public authorities, both state and county, having occasion to do so, for three years dealt with it and recognized it as a legal depository of the county. The sheriff and tax collector of Stone county was required by the board of supervisors to so deal with it. He dealt with the bank as county depository in good faith, believing, and having every reason to believe, that it had become a legal depository of the county. We think it would be an onerous burden on, and a manifest injustice to, the tax collector, to hold that he acted at his peril in dealing with the bank as a depository; that it was incumbent on him, before paying the funds in his hands into the bank, to see whether or not it was a legal depository.

Appellant, to sustain his position, relies upon State v. Lee, 72 Miss. 281, 16 So. 243, and other like decisions by our court, which held that a public officer having public moneys in his hands is an insurer of the safety thereof, and is only relieved from responsibility by an act of God or the public enemy. Those decisions have no application where the officer has legally placed the funds in his hands in the custody of some officer or public agency designated by law as the proper custodian thereof. Those

cases apply only to funds lost by a public officer, either while they were in his possession, or where he had disposed of them in a manner not authorized by law. Take, for illustration, the case of State v. Lee, supra. Lee was the tax collector of the city of Greenville. The mayor and financial committee of the city council, who constituted a majority of the city council, authorized him to deposit the funds of the city in a bank. This was done, the bank failed, and the funds were lost. Whereupon the state revenue agent brought suit for the benefit of the city against the tax collector and his bondsmen to recover the funds. The court held the tax collector and the sureties on his official bond liable—that the tax collector was an insurer of the safety of the funds. But the court stressed the fact that the action of the mayor and the finance committee in directing the tax collector to deposit the funds in the bank was without authority of law. There was no statute or ordinance authorizing them to select a depository for the city. It was the duty of the treasurer to safely keep the funds himself. That would have been a very different case if there had been any authority of law for the action of the mayor and finance committee in directing the tax collector to select a depository for the funds.

Affirmed.

**Ethridge, J.**, delivered a dissenting opinion.

With due deference to the majority of the court I dissent from the conclusion arrived at. In my opinion the decision is not only unsound as a legal pronouncement but will be extremely hurtful to the public interest. The creation of a county depository is not the creation of an office, but is a public contract between the bank and the county on conditions prescribed by law, and the jurisdiction of the board of supervisors to make such contract is the exercise of a special and limited jurisdiction and power, and all the jurisdictional facts must appear in

the order creating the depository before it becomes such. Ferguson v. Board of Sup'rs of Monroe County, 71 Miss. 524, 14 So. 81; Bolivar County v. Coleman et al., 71 Miss. 832, 15 So. 107.

The method of establishing a county depository is embraced in sections 4340 to 4348, inclusive, Code of 1930. In short, these sections prescribe for the money of a county to be deposited in a county depository if any bank in that county or in an adjoining county shall qualify according to law and contract, giving the securities required by statute to the board of supervisors of the county for the safekeeping of such funds. Section 4341, Code of 1930, Laws of 1926, chapter 248, requires the board of supervisors at the December meeting each year to give notice to all banks in their county that bids will be received at the January meeting following for the privilege of keeping the county funds or any part thereof, and a copy of this notice shall be mailed to each bank in the county and in adjoining counties, and at the January meeting the board shall receive bids or propositions for the privilege of keeping the money and becoming a depository. It is provided in the latter part of this section: "The bids or proposals shall designate the kind of security as authorized by law, which the banks propose to give as security for funds, and the board shall cause the county funds and all other funds in the hands of county treasurer to be deposited in the bank or banks proposing the best terms having in view the safety of such funds and the terms made with each depository shall remain in force for the current year and until new arrangements shall be made according to this chapter."

By the next section it is provided that, if no bid is made by any bank in the county or adjoining counties at the January meeting, the board of supervisors shall advertise at some subsequent meeting for a depository and select same, in the manner provided by law.

It is provided in section 4343: "Any county failing to secure a county depository by the advertisement to the

banks of the county and of the adjoining counties, shall readvertise at any subsequent meeting of the board of supervisors, and as soon as possible for bids for a county depository; such notice shall be published once a week for three weeks in some newspaper published in the county, and in a daily newspaper in Jackson, Mississippi, and shall state that the proposal is open to any bank in the state, and that banks outside of the county shall have preference over county banks.''

Section 4346 provides:

''Any bank in a county, or in an adjoining county where there is no bank in the county qualifying, may qualify as a county depository by placing on deposit with the county treasurer as security any of the following securities in an amount ten per cent greater than the maximum sum to be placed on deposit in such bank at any one time, to-wit:

''Mississippi registered and coupon state bonds, Yazoo and Mississippi Delta Levee District bonds, Mississippi Levee District bonds, county bonds and municipal bonds of counties and municipalities in Mississippi, state of Louisiana bonds, bonds of the city of New Orleans and state of Louisiana levee bonds, United States bonds, Mississippi drainage district bonds, bonds of any consolidated school district, or road district of this state, certificates of indebtedness and notes of the state of Mississippi which are legal, recognized binding obligations of said state of Mississippi, under the Constitution and laws thereof, when offered as security or surety bonds of any surety company authorized to do business in the state of Mississippi, but no bond shall be accepted as security except for its market value, and if at any time the securities which may be deposited shall depreciate in value, the board shall have the right to demand other and different security, and a failure on the part of the depository to deposit the additional security when demanded shall forfeit its rights as a depository, and all county funds in its hands shall be immediately returned to the county

treasurer. The board of supervisors shall have the right to reject any and all bids where, in the opinion of the said board the security offered is not sufficient.''

Section 4347 provides that, after a bank has in every respect complied with the law and shall have placed security as required in the hands of the county treasurer, the president and clerk of the board of supervisors shall issue to such depository a commission. The term of the commission shall be one year from its date.

Section 4348 provides the form of the commission to be issued to the bank, and recites, among other things, the following: ''——— Bank of ———, having complied with all of the requirements of law, and having placed the following approved securities with the county treasurer, to-wit: [to be named in the commission], is hereby created and appointed a depository of the county of ——— for a term of one year, . . . and is hereby authorized and empowered to receive and disburse the funds of said county according to law and the *rules of the board of supervisors* [italics supplied]. . . .'' It also provides that the bank shall not have on deposit at any time a sum exceeding the sum named in the commission, and provides that the depository agrees to account for the use of the county funds there kept on deposit and to pay interest thereon at the rate of and in the manner provided by law for the use of county funds.

It will be noted from a reading of section 4346, above set out in full, that the board of supervisors is required to pass upon the securities to be given by the bank to secure the county funds deposited with it, and it is provided therein that no bonds shall be accepted as security, except for the market value, and then provides: ''And if at any time the securities which may be deposited shall depreciate in value, the board shall have the right to demand other and different security, and a failure on the part of the depository to deposit the additional security when demanded shall forfeit its rights as a de-

pository, and all county funds in its hands shall be immediately returned to the county treasurer,'' and they are given the right to reject any and all bonds, where, in the opinion of the said 'board, the security is not sufficient. As the board of supervisors can only act by an order entered upon its minutes, the order approving the securities to be received and the recital of compliance as a condition precedent to becoming a depository of the securities named in the statute is essential, and no officer would be authorized, in the absence of the issuance of a commission, to deposit any funds in a depository where there was no such order on the minutes of the board. When the board has issued a commission to a bank as a depository, containing the statutory recitals contained in section 4318, an officer could then assume that the depository had regularly complied with all of the precedent conditions imposed by law and would be protected in so dealing with a depository, but before an officer should deposit public money in a bank he should at least demand the commission of the bank as a depository and see that it conformed to law, or else he should examine the minutes of the board of supervisors to see that all the precedent steps had been complied with.

It is a fundamental principal of law that an officer in dealing with public funds must safely keep them, or he must pay them over to some person or institution authorized by law to receive such funds. Where the statute points the source of information as to what is required to create a depository, as it does in the statute referred to, the officer should pursue the sources of information and learn from them whether he is authorized to pay the money to such depository. It cannot be contended with reason, I think, that the sheriff would have any protection whatever should the county auditor or chancery clerk issue a received warrant to pay money where the law did not authorize such person, officer, or bank to receive it. The sheriff could not pay out the

public money intrusted to his custody to any person not authorized to receive it without being liable upon his bond therefor. In Powell v. Board of Sup'rs of Tunica County, 107 Miss. 410, 65 So. 499, Ann. Cas. 1916B, 1262, the court, in the second syllabus to the opinion, held: "The selection of a bank does not complete its creation as a county depository. This is only accomplished by the depositing of the securities, which is followed by the issuance of a commission showing its qualification as a depository to receive and disburse funds in amount not exceeding a sum stated." At page 426 of the Mississippi Report, 65 So. 499, 501, in discussing this question, the court said: "The selection of a bank does not complete its creation as a county depository. This is only accomplished by the depositing of the securities, which is followed by the issuance of a commission showing its qualification as depository to receive and disburse funds in amount not exceeding a sum stated. The Bank of Tunica, elected county depository for all funds, only qualified for a definite amount. It is not a question of election but of qualification. A bank may be elected, and still never qualify by depositing the securities."

It will be seen that this court expressly held that the selection of the bank as a depository was not sufficient but that it only became depository when it had deposited the securities required of it and had a commission issued to it. In the present case there is no pretense that any securities were deposited as required by the statute, nor was there any commission issued as required by the statute. The only thing that did appear was that the county had selected a bank to be the depository when it qualified by placing the securities required by law to secure the county funds. The board undertook to delegate its function to the clerk to pass upon the sufficiency of the securities. In passing upon the sufficiency of the securities the board is exercising a judicial power which could not be delegated. As a legal proposition every of-

ficer and other person must be presumed to know the law, because every person must know the law at his peril. Not having deposited any securities, the bank did not become a depository either actual, legal, or de facto. In fact there can be no such thing in the strict meaning of the term as a de facto depository any more than there can be a de facto contract, because the whole matter is contractual. No duty as a depository can be imposed upon the bank until it has contracted to comply with the law. The duties imposed in the statute are contractual duties that are elements of a contract and not a police law or governmental regulation under the exercise of the police power. All the statutory provisions as to what shall be done after the contract is made, so far as the bank is concerned, are contractual. When the law has been complied with, and when the bank has become a depository, the bank is merely debtor to the county, the money deposited with the bank is the bank's money, and the bank is the debtor of the county. Robertson v. Bank, 116 Miss. 501, 77 So. 318; Sunflower county v. Bank, 136 Miss. 191, 101 So. 192. A bank which has not filed the securities required by law is not a legal depository. Bank of Commerce of Gulfport v. Gulfport, 117 Miss. 591, 78 So. 519, 521. In that opinion it was said, among other things: "It therefore follows that there was no bond as required by law given by the bank, and therefore the bank failed to qualify as a municipal depository. Since the bank did not become the legal municipal depository, then the city had the right to proceed under section 3485, Code of 1906."

In Perkins v. State, 130 Miss. 512, 94 So. 460, cited in the majority opinion, it was held that, where a bank, instead of giving the securities required by law, gave personal securities and received the public funds as though it was a depository, the sureties could not set up as a defense the illegality of the contract. What was said in that opinion was based upon the doctrine of

estoppel by contract contained in the written bond which recited contractual stipulations, which, although not good under the statute, were good at common law. That case, as also the case of Bank of Commerce of Gulfport v. City of Gulfport, already cited, holds that, while it is not a legal depository, the bank and the sureties having received the deposit and having given a bond good as a common-law obligation could not set up the illegality of the contract of which it had secured the benefit.

By section 2914, Code of 1930, it is provided that all money deposited in a bank, or with any depository, by or for a tax collector, or other officer having the custody of public funds, state, county, municipal, levee board, road districts, drainage districts, or school districts, whether the same be deposited in the name of the officer, as an individual or as an officer, or in the name of any other person, is prima facie public money and a trust fund, and is not liable to be taken by the general creditors of the officer or by the creditors of the depository, and that whenever any corporation, doing a banking business, of whose property and banking business the banking examiner has taken possession, as provided by law, it shall be the duty of such banking examiner, or his agent in charge, out of the first money coming into his hands, to immediately pay to the tax collector, or other officer having the custody of such funds, the full amount thereof, as far as possible; and on failure to do so, the chancery court of the county where said corporation was doing business, or the chancellor thereof, in vacation, shall, on ten days' notice, require the payment of all, or such part thereof as is on hand, until the full amount due is paid, but it provides that nothing herein contained shall in any manner vary or affect the liability of such officer or his bondsmen.

By section 2915, Code of 1930, it is provided that any officer, state, county, municipal, or district, or any other custodian of public funds or property, who shall im-

properly withhold same from the state or county treasury or other authority, whose duty it is to receive same, or who shall fail to turn property over to the proper custodian, or who shall in any wise be in default as to any money or property held by him as a public official in this state, or in any other capacity as custodian of such funds or property, which may come into his hands by virtue of his official position, whether in the proper performance of his official duties, or otherwise, shall be liable on his bond for all cost of collection or recovery of money or property, including in such costs the commissions, if any, of the state tax collector or the Attorney-General, and all other costs connected therewith, and shall be liable on his official bond for all costs of recovery of such funds, including the commissions, if any, which may be due to the officer making the collection. The section then concludes: "It is the purpose of this section to preserve in its integrity the public funds and property in this state, and it shall be so construed that the commissions, if any, and fees of the attorney general and the state tax collector, and all other costs of collection must be borne by such derelict official or custodian."

By section 2889, Code of 1930, it is provided: "The bonds of all public officers shall be made payable to the state, and shall be put in suit in the name of the state for the use and benefit of any person injured by the breach thereof; and such bonds shall not be void on the first recovery, but may be put in suit from time to time by any party injured by the breach thereof, until the whole penalty shall be recovered."

By section 3341, Code of 1930, chapter 192, Laws of 1926, it is provided: "The sheriff of each county shall be tax collector therein, and at the time of giving bond as sheriff shall give bond as tax collector, with sureties as required by law, in a penalty equal to twenty-five per cent of the taxes assessed in the county the preceding year, however, in no event to exceed one hundred

thousand dollars conditioned that he will in all things faithfully execute and perform all the duties of tax collector of his county to the best of his skill and ability so long as he shall continue in office; and he shall also take and file the oath of office of tax collector. In case of the failure of the sheriff to qualify as tax collector within the same time allowed for taking the oath of office, and giving bond as sheriff he shall thereby vacate the office of sheriff and the vacancy shall be filled according to law."

It will be seen from a reading of this section that the bond must be conditioned that he will in all things faithfully execute and perform all duties as tax collector of his county to the best of his ability.

In State v. Lee, 72 Miss. 281, 16 So. 243, the court held: "Public officers are insurers of the safety of public money coming into their hands by virtue of their office, and are liable, in all cases, for its loss, unless caused by the act of God, or the public enemy"—citing Griffin v. Board of Mississippi Levee Commissioners, 71 Miss. 767, 15 So. 107. In this case the finance committee of the city had directed and authorized Lee to pay the money into a bank rather than to turn it over to the municipal treasury, and in accordance with this direction and authority he did deposit the money into the bank instead of the treasury. The finance committee in an order written and signed by it provided, among other things: "And whereas, said John M. Lee says he is ready and offers to turn over said amounts to the treasurer (?) of said city of Greenville, now, we, J. H. Wynn, mayor, and J. P. Finley, O. M. Blanton, and W. E. Hunt, councilmen and members of the finance committee of said city of Greenville, desire that said Lee do not turn over said money to the treasurer, and do hereby authorize him to retain possession of same until we make demand for it. The object of this instrument is to relieve said Lee and his bondsmen of

responsibility only in the event of the failure of any or all of said depositories during the existence of this trust." In the course of the opinion the court said: "The law pointed out to the collector what should be done with the money, and neither the sureties on the treasurer's bond, nor the mayor and the finance committee of the city, could lawfully direct him not to do so. However solvent the banks may have been, or may have been believed to be, there was no law and no ordinance of the city by which they were recognized as legal depositaries of the public funds. The responsibility of the collector and the sureties upon his official bond is the security contemplated and provided by the law for the safety of the public moneys. This security could not be waived, or something else substituted for it, unless by some authority clearly given by law. In the agreement of facts it is stated: 'The said Wynn in his official capacity as mayor, and the said Finley, Blanton, and Hunt in their official capacity as councilmen,' etc., ordered the collector not to pay over the money to the treasurer, and directed it to be kept in the banks, and agreed to discharge the collector and his sureties from liability if it should be lost by reason of the insolvency of the banks. We do not understand that anything more is meant by this statement than that the mayor and councilmen professed and attempted to act officially, and did so act, if, in the opinion of the court, they had authority to do so; for of course, if the mayor and finance committee, having authority, executed the writing shown in the agreed facts, there is nothing in the case for decision. That this construction is the construction given to the agreement of facts is made evident by the further statement that nothing appears on the minutes of the council in reference thereto. We are therefore of the opinion that the collector and the sureties on his bond are liable, and, under the agreement, a judgment will be entered accordingly."

The court also said in that opinion: "The questions presented by the record are two: (1) Was the tax collector discharged from liability by reason of the mere fact of his having deposited the money of the city in a bank of good credit, where it was lost without his fault? (2) If this be decided against the appellees, then the question is whether the collector is discharged by reason of the action of the mayor and finance committee of the city. But little need be said upon either question. The decisions upon the first question are conflicting, but the better view, in our opinion, is that the public officers are insurers, instead of bailees, of the funds which come into their hands by virtue of their office, and are absolutely responsible unless excused by the act of God or the public enemy. The conflicting authorities are noted in Throop, Pub. Off., p. 238 et seq. In this state the question has recently been decided. Griffin v. Levee Commissioners, 71 Miss. 767, 15 So. 107."

In Griffin v. Board of Mississippi Levee Commissioners, 71 Miss. 767, 15 So. 107, it was held in the second syllabus: "In a suit on the bond of a tax-collector for taxes collected and not paid over, it is no defense that the collector was not furnished with a safe, and that, for safe-keeping until the time of settlement should arrive, he deposited the money in a bank which was considered entirely solvent, but which subsequently failed, whereby the money was lost." In the concluding paragraph of the opinion in this case, the court said: "The demurrer to the plea in bar was also rightly sustained. The idea that the tax collector may make a general deposit of public money in bank, and thereby absolve himself from liability to pay over as he is by law required to do, is so utterly unreasonable as to need no combating. Like all others depositing funds in bank, the tax collector took the risks involved in so doing. The state looks to its officer, and the officer must look to his unreliable or unfaithful banker."

In these cases our court adopted that line of authorities which held that a public officer is an insurer of the money placed in his hands, and that he can only escape liability therefor by paying it to the party authorized by law to receive it, or else by an act of God or the public enemy. As pointed out in the opinions cited, there are two lines of authority upon the proposition, one of which holds the officer to be an insurer of public funds; the other which holds him not liable where he in good faith and under reasonable circumstances deposited the money in the bank or in a depository deemed solvent and safe at the time of the deposit. Of course, our own decisions are controlling in such matters, and it is the policy of our law to make those intrusted with the public funds belonging to the state and counties strictly accountable therefor. Under the holding of the majority it is possible, and in view of the many recent bank failures probable, that, if this remains a law, the public funds will be dissipated by careless, negligent, and irresponsible officers dealing with unsafe and insolvent banks, and the operation of the various governmental activities so essential to the public welfare seriously crippled and greatly impaired. There is no necessity to indulge an officer in a negligent course of conduct such as the record in the case before us shows. The simplest diligence on his part would have disclosed to him, if he did not know, that the bank had not qualified as the depository. Had he acted with prudence and diligence, as he is required to do by law, the money would never have been lost. In my opinion the authorities cited in the majority opinion to sustain its conclusion do not do so.