## CITY OF BILOXI *v.* GULLY, STATE TAX COLLECTOR.

(Division A. Feb. 12, 1940.)

[193 So. 786. No. 34016.]

J. D. Stennis, Jr., of Biloxi, for appellant.

J. W. Savage, of Gulfport, for appellee.

Argued orally by **J. D. Stennis, Jr.**, for appellant.

**Griffith, J.**, delivered the opinion of the court.

Under Section 6417, Code 1930, one-half of all ad valorem taxes collected by or for a county for road purposes —but not including that for paying road bonds—on property within a municipality which works its streets out of its own treasury is required to be paid over by the county to the municipality.

There arose a difference between the County of Harrison and the City of Biloxi in regard to the collections made by the county on property within the municipality for road purposes during the period between June 1, 1936, and July 1, 1938, the city claiming that on a careful audit made by it, the county owed it a balance on this fund amounting to $4,220.91, for which it filed its detailed claim with the Board of Supervisors of the county on July 30, 1938. The city made known to the board at the same time that this detailed balance did not include the amounts of road taxes represented in redemptions from tax sales and that when the city had completed its full audit of all these matters the additional balance due out of the redemption money would also be claimed.

There apparently was not available money, money not already allotted, in the general county road funds to pay this claim when it was presented, and there was an understanding between the two authorities that the county would pay, out of the tax moneys which would regularly begin to come in about the close of the year, the true balances due the city as disclosed by a full and correct audit. In pursuance of this understanding the city proceeded with its full and complete audit so as to have it ready for presentation, in its amended and complete form,

and to include every item of balance, by the time the anticipated tax money would be coming into the county treasury.

Accordingly, when the city had concluded the work of said complete audit, the city presented it to the county on January 20, 1939, this audit and claim showing a balance due the city out of all the funds of which an account was to be taken under the law, in the sum of $7,081.63.

While this was going on, a deputy of the State Tax Collector, who knew thereof or had sufficient knowledge to put him on notice of it, hastily made an alleged audit and gave notice to the Board of Supervisors, in December 24, 1938, that he was demanding, in behalf of the City of Biloxi, the payment on this same difference or balance in the sum of $5,409.42; but, in his haste to make up this audit, he erroneously included the sum of $1,618.92, which had already been paid to the city by the county on a former remittance, so that with this item eliminated the demand by the State Tax Collector was for $3,790.50, whereas the claim filed by the city five months before had been for $4,220.90, or approximately $430 more.

In this situation the Board of Supervisors declined to take any present action on either demand, with the result that the State Tax Collector filed his action in the circuit court in behalf of the City of Biloxi on February 16, 1939, for the sum of $5,409.42, which, as already mentioned, included the erroneous item of $1,618.92, and soon thereafter the city filed its own suit in the chancery court for the balance of $7,081.63, as shown by its more complete and more careful audit.

The above statement of facts is taken from the allegations embraced within the petition of intervention and the exhibits and motions herein referred to and made a part thereof hereinafter to be more particularly mentioned, which allegations the city offered to prove but was not allowed to do, and which must be taken as true, so far as the disposition of the present appeal is concerned in view of the substantive rule which we shall now state.

It was the primary obligation and duty of the city to collect these balances from the county. According to the allegations, and offer of proof in support thereof, the city was alertly and actively engaged in the proper processes of making that collection in the full amount due it. There is no suggestion that the city was omitting or overlooking a single item of that to which it was lawfully entitled, and no suggestion that it was not pressing forward to obtain the money on and for these items and every one of them as soon as there was available money in the county treasury with which to pay them, and without which the county, of course, could not pay them. There is no suggestion that the county was denying the obligation to the city; the only suggestion or inference in that regard being that the county was requiring that it be shown by a proper and accurate and competent audit that it owed the demanded sum and no more.

There was no such purpose in the creation of the office of State Tax Collector and in the grant of powers to him that in such a situation he should jump in and intercept the orderly, reasonable and diligent efforts of the governmental subdivision during the progress of its said efforts, and thus imposes upon the subdivision the payment of a 20% fee to him for doing what the subdivision was already in the reasonable, orderly and diligent process of doing for itself, and which it was doing as to every item demanded by the State Tax Collector. The entire course of adjudication by this court since the creation of the office of State Revenue Agent, now called the State Tax Collector, discloses this fact, and so clearly that it is not necessary to enter upon a review of the cases here.

When the action filed by the State Tax Collector came on for attention in the circuit court, the city moved that the case be transferred to the chancery court, so that it might there be consolidated with the pending suit in that court on the same subject. This motion was overruled, and thereupon the city filed its petition for intervention in the circuit court, as has already been mentioned, which

petition was allowed and the city admitted thereunder, apparently without any objection to that procedure on the part of the State Tax Collector, but, as already stated, when the city offered proof of the facts as hereinabove stated, the offer was refused and the court proceeded to render judgment in favor of the State Tax Collector for 20% on $3,790.50, the latter sum being the difference between the $5,409.42 sued for by the State Tax Collector and the $1,618.92 erroneously included as already stated.

The reason for which the judgment was rendered for 20% on the $3,790.50 and not for the full amount last named was that on July 27, 1939, the city had prevailed on the county to pay it 80% of the sum claimed and to pay into the hands of the clerk the remaining 20% there to abide the decision of the court whether the State Tax Collector was entitled to the said 20% as his fee, from which it appears that all that now remains involved in the litigation is the fee claimed by the State Tax Collector, and to which we are holding that he was not entitled if the city shall make the proof of the facts substantially as hereinabove stated.

The entry into the case by the city, through its own attorney, was called an intervention, and for want of a better expression it may be so termed. Strictly speaking, however, an intervention is where a third party is admitted into a case, and such an intervention is not permitted in actions at law except as provided by statute. Here there was no intervention in the strict sense of that term. In the action by the State Tax Collector in behalf of the city, the latter was the real party plaintiff; and the admission into the action of the attorney expressly authorized by the governing body of the city to appear therein and to show that the action by the State Tax Collector was not in good faith, but was mainly, if not solely, to get a fee out of the money due the city, and instead of being an aid to the city was a hindrance in what it was already doing and had definitely on the way to

complete accomplishment, was an admission not by way of an intervention, strictly speaking, but was one squarely within the holding of this court in Robertson v. Bank of Batesville, 116 Miss. 501, 77 So. 318, wherein it was said that where there are several agents who are allowed to sue in behalf of a political subdivision of the state, the court has the power to see that the agent who first sues shall act in good faith; and when it appears or is made known to the court that the agent who has first sued is not conducting the litigation in good faith and in the real interest of the political subdivision, the court may authorize some other agent or officer to appear and file appropriate pleadings and take the necessary steps for the protection of the interests of the subdivision.

The attorney for the city came into court armed with an order made by the City Council and spread on its minutes authorizing the attorney, naming him in the order, to take the steps which he pursued in this case. The court, therefore properly admitted him and the petition which he filed in behalf of the city, but erroneously refused to hear the evidence offered in support thereof; and, consequently, the judgment must be reversed and the cause remanded.

Reversed and remanded.