HARPER *v.* BETTS.

Opinion delivered July 9, 1928.

*Ivie C. Spencer* and *Cooley, Adams & Fuhr,* for appellant.

*Dudley & Dudley,* for appellee.

HUMPHREYS, J. The only question involved on this appeal is whether an administrator and the surety on his bond are liable for funds of the estate deposited by the administrator in his representative capacity for safe-keeping, in a bank which afterwards failed, but of good repute and apparently solvent when the deposit was made, until he could obtain an order of court with reference to the disposition thereof.

This suit originated in the probate court of Craighead County, by petition of appellee for an accounting, settlement and discharge of T. J. Harper, the adminis-

trator of the estate of Roy Betts, deceased. Appellee was the only heir of her son, Roy Betts, who died April 22, 1926. T. J. Harper was a friend of the family, and distantly related to appellee by marriage. During the continued and last illness of Roy Betts, Harper paid the premiums on a life insurance policy, which he carried in the Metropolitan Life Insurance Company, for over a year, amounting to a total of $16.50. On account of the friendship, relationship and the illiteracy and bodily infirmities of appellee, Harper administered upon Roy Betts' estate when he died. The insurance policy constituted the only asset of the estate. Harper filed with his application for letters of administration a bond in the penal sum of $1,000, signed by himself and the United States Fidelity and Guaranty Company as surety. Immediately after obtaining letters of administration he collected $564.75 upon the policy from the life insurance company, and, after deducting $16.50 which he had advanced as premiums and $34.50 as expenses of the administration, he deposited the balance, amounting to $508.95, in the First National Bank of Jonesboro, in his representative capacity. At the time the bank was a going concern, in which he was carrying his individual account, and was apparently solvent. In eighteen days after he made the deposit, said bank failed, and was closed by the Banking Department, and is still in the process of liquidation through a receiver. Since the failure a 20 per cent. dividend has been declared, which was paid appellee, by and with the consent of the administrator. The United States Fidelity and Guaranty Company was made a party to the proceeding in the probate court.

The administrator and his surety interposed the defense that the insurance money was deposited in said bank, in good faith, by the administrator for safekeeping until disposition could be made of same under an order of the court, and that, within three weeks after making the deposit, the bank failed and was taken over by the Banking Department for liquidation. The admin-

istrator's bond was executed in accordance with the requirements of § 23 of Crawford & Moses' Digest. Among the undertakings and guaranties in the bond, the administrator agreed and the surety guaranteed that said administrator would make just and true accounts, and would make due and proper settlements thereof, from time to time, according to law, or the lawful order, sentence or decree of any court having competent jurisdiction of the subject-matter.

Upon a trial of the cause in the probate court, and circuit court on appeal, judgments were rendered against appellants for the amount collected on the insurance policy, less the amount advanced by Harper for premiums on the policy and the necessary expenses of the administration.

An appeal has been duly prosecuted to this court from the judgment of the circuit court.

The facts are undisputed, and are substantially as stated above. The trial court rendered judgment upon the theory that an administrator is responsible for all moneys received by him in such capacity, absolutely and in all events. The effect of the decision of the trial court was to make administrators of estates and their sureties insurers or absolute guarantors of any and all properties and moneys which may come into their hands in their representative capacities.

The undertaking of administrators and their bondsmen is to faithfully administer the estate and cause to be made just and true accounts and to make due and proper settlements thereof, from time to time, according to law, or the lawful order, sentence or decree of any court having jurisdiction of the parties and subject-matter. There is no statute in this State which requires administrators to deposit funds of an estate for safe-keeping until disposition can be made thereof under orders of court, and no statute prohibiting them from doing so. It would certainly be an imprudent and hazardous undertaking for administrators to keep upon their persons or in private hiding places funds belonging to

an estate, and unjust and inequitable to require them to deposit the funds belonging to an estate in banks at their own or their bondsmen's peril. Such a rule would impose harsh and unreasonable responsibilities upon administrators, and prevent prudent business men from assuming such responsibilities. The law has worked out a rule applicable to situations of this kind which is equitable and just and aptly expressed in 11 Am. & Eng. Ency. Law, pp. 947-949. It is as follows, omitting unimportant parts:

"As a general rule, there is no absolute requirement of law that funds of the estate shall be deposited in a bank or other repository where money is usually placed for safekeeping, but the duty of the personal representative in such matters is governed by the rule that he must exercise the care and prudence that ordinarily prudent men exercise in regard to their own affairs; and this is the measure of his responsibility if he fails to deposit the funds of the estate in a safe place. * * * If any executor or an administrator, in his representative capacity, deposits funds of the estate in a bank in good standing, and nothing occurs to indicate that the affairs of the bank are in such condition as would lead a reasonably prudent man to withdraw the funds, he is not liable for the loss thereof, though resulting from the subsequent failure of the bank. * * * The consent of the beneficiaries to the deposit will relieve the personal representative from liability for loss."

The same rule is expressed as follows in 11 R. C. L., 158:

"It is an accepted principle in most jurisdictions that an executor or administrator who deposits the money of the estate, in good faith, in a solvent bank of good repute, to trust account and not to his own account or credit, is not liable for the loss of such money through the subsequent insolvency or failure of the bank."

The same rule is expressed in the following language in 24 C. J., 50:

"It is proper for the executor or administrator, for the purpose of safely keeping the funds of the estate during administration, to deposit the same in a bank, and indeed, under some statutes, the representative is required, or the court is empowered to order him, to do so. If the funds are so deposited and due care is used in selecting the depository, the representative is not necessarily responsible for a loss resulting from the subsequent failure of the bank, the test being whether he has exercised such care as men of common prudence ordinarily exercise in their own affairs."

The rule thus expressed is sustained by a unanimity of both Federal and State authorities. We think the facts in the instant case bring it within the rule thus announced. The undertaking by appellants was to administer the estate in accordance with the law, and the law does not exact unreasonable things. The undisputed facts show that Harper exercised such care as a man of common prudence ordinarily exercises in his own affairs in making a deposit of the fund in his official capacity for safekeeping in the First National Bank of Jonesboro. He met the test required by the rule, and he and his bondsmen should have been acquitted of liability on the bond. He and his bondsmen sufficiently accounted for the fund by showing that it was deposited for safekeeping, immediately upon its receipt, in a bank which was a going concern and apparently solvent, and so regarded in the community, and which failed and was closed by the Banking Department within a short time after the deposit was made.

On account of the error indicated the judgment is reversed, and the cause is remanded with instructions for further proceedings not inconsistent with this opinion.

Smith and Kirby, JJ., dissent.