CITY OF PARSONS v. FIDELITY & DE-
POSIT CO. OF MARYLAND.

SAME v. NATIONAL SURETY CO.

Nos. 210, 211.

Circuit Court of Appeals, Tenth Circuit.

Sept. 4, 1930.

Rehearing Denied Oct. 24, 1930.

Douglas Hudson, of Ft. Scott, Kan., and Carl V. Rice, of Parsons, Kan., for appellant.

P. E. Reeder, of Kansas City, Mo. (E. Milton Smith, of Baltimore, Md., and George J. Winger, of Kansas City, Mo., on the brief), for appellee Fidelity & Deposit Co.

Henry L. Jost, of Kansas City, Mo. (Sebree, Jost & Sebree, of Kansas City, Mo., on the brief), for appellee National Surety Co.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

LEWIS, Circuit Judge.

These cases present the same issue of law and will be disposed of in one opinion.

The actions are on official bonds given to the City of Parsons by W. W. Cavanaugh, its city treasurer, and by the respective appellees as his sureties. The State statute required the bonds of Cavanaugh, and the question is whether their conditions were broken with consequent damage to the city. In No. 210 the condition of the bond is that "if the said W. W. Cavanaugh shall fully and faithfully discharge his duties as treasurer of said City of Parsons, Kansas, and shall safely keep all public moneys intrusted to his care and shall save the City of Parsons, Kansas, free and harmless from and against all losses caused by his neglect of duty or malfeasance in office during the term hereinabove mentioned, then this obligation shall

316

be null and void; otherwise, to be and remain in full force and effect." This bond covered the period from January 1, 1921, to April 30, 1923.

In Case No. 211 there were two bonds covering separate parts of a continuous period extending from April 30, 1923, to July 20, 1926. Their conditions were these: "If the said W. W. Cavanaugh shall safely keep all moneys which may be collected or received by him or which otherwise come into his hands by virtue of his office, and pay the same over to the proper person or authority, and shall honestly and faithfully discharge and perform all and singular his duties as city treasurer according to law, during his continuance in office, then this obligation shall be void; otherwise, to remain in full force and effect."

Each complaint charged that Cavanaugh was short in his official bank account of the city's funds in named amounts at the end of the respective periods covered by the bonds, that he had applied the amount represented by the shortage to his own use, had died without making restitution and judgments were asked for those amounts.

The answers in the two cases are alike in substance. After alleging that the State Bank of Parsons and other banks in that city were the depositories of city funds under designation of the city, as provided by statute (section 13—2107, Kan. Rev. Stat. 1923), it is alleged that all city funds received by Cavanaugh were deposited in those banks, and it is then averred that on the deposit of said funds by Cavanaugh in said banks his official duties as city treasurer were thereby fully performed, terminated and ceased so far as the care, custody, possession of and accountability for said funds were concerned. As a further defense it is alleged that after the city designated said banks as depositories it entered into contracts with them, whereby it agreed that Cavanaugh, its treasurer, would deposit equably among and in each of said banks city funds coming into his hands, and each bank agreed that it would promptly pay all warrants and drafts made by the city treasurer on the funds so deposited when said warrants and drafts should be countersigned by the proper officers of the city (auditor or city clerk), as provided by said statute, and drawn upon the funds of the city in said banks. Each bank further agreed that it would file with the city clerk on the first Monday of each month a statement of the daily balances on deposit with it for the preceding month (not

a statutory requirement as to cities of the first class), and that it would pay interest to the city on said daily balances at an agreed rate, crediting the same to the account in said bank. It is then alleged that Cavanaugh, as city treasurer, did apportion to and deposit in the designated banks in equal proportions all funds received by him as city treasurer, by reason of which he thus and thereby fully performed his duties as city treasurer concerning the care, keeping and accounting for the moneys received by him in his official capacity. As an additional defense it is alleged that when Cavanaugh made the deposits aforesaid in the manner stated, the banks became the sole and exclusive custodian of said city funds and debtor to the city therefor, and that any loss sustained by the plaintiff of said funds was due to and occasioned by the omission and failure of the banks to perform their duties as custodian of said funds, and that such loss was not due to or occasioned by any breach of Cavanaugh's official duty. As a further defense it is alleged that by the contracts between the city and its depository banks the city agreed to direct its treasurer to deposit city funds in the banks upon the condition that said banks would pay all warrants and drafts drawn on its funds when said warrants and drafts were properly made and countersigned by the proper officers of the city (auditor or city clerk), and that the city treasurer did not draw out the alleged shortage in his account of city funds on warrants and drafts countersigned by the proper city officers, as provided by law, and for this reason neither Cavanaugh nor the sureties on his bonds owe any sum of money whatsoever to the city. These defenses, stated at greater length and with more detail in Cause No. 211 than in Cause No. 210, seem to be denials of the alleged breaches of the bonds. The contracts between the city and the depository banks, to which reference is made in the answer, contained alleged conditions not required by the statute. In that respect the statute (section 13—2107, supra) goes no further than to provide that cities of the first class shall enter into contracts with depository banks in which the banks shall bind themselves "to pay such city not less than two per cent. interest per annum, which said interest shall be payable at the end of each month, and shall be based on the average daily balances for the month, and he [the city treasurer] shall report the amount collected in his monthly statement following such collection."

At the request of appellant and with con

sent of appellees, shown of record, the court appointed a referee to take the proof and report his findings of fact and his conclusions of law in each case. The appointment was made under the State statute. The referee found that during the two periods respectively covered by the bonds Cavanaugh was city treasurer; that the city commissioners, Parsons being a city of the first class and under commission form of government, selected, in compliance with the State statute, section 13—2107, supra, the State Bank of Parsons, of which Cavanaugh was cashier, and other banks of the city, as depositories of city funds, in which the city treasurer was required by statute to deposit all funds coming into his hands as city treasurer; that Cavanaugh first deposited city funds coming into his hands in the State Bank of Parsons, and then, by checks drawn on that bank and signed only by himself as city treasurer, he distributed the city funds equally among all the depository banks; that it had never been the practice to have checks or drafts signed by him as treasurer countersigned by any other city official, as the State statute directed. The statute required that each depository bank should give the city a surety company bond, conditioned that the bank would safely keep and account for and pay the city funds on checks or drafts of the city treasurer, and that all checks or drafts should be countersigned by the auditor or city clerk. The referee found that contracts between the city and depository banks had been executed, and that in these contracts the banks agreed to file with the city clerk on the first Monday of each month a statement of the daily balances on deposit for the preceding month and to pay a stipulated rate of interest on said balances. These contracts, however, were made in 1918, but the referee found that by observance and recognition they were continued in force during the periods covered by the bonds, although he later found that no statements of daily balances were filed with the city clerk by any of the banks. He found that no checks or drafts signed by Cavanaugh were countersigned by the auditor or clerk. It had long been the settled practice and custom to ignore that statutory requirement. City warrants signed by the proper officers, negotiable city bonds and their interest coupons were received, paid and charged against the account of city funds in all of the banks. There are other findings of the referee to the effect that all of the shortage was in the account in the State Bank of Parsons, that a bookkeeper in that bank made up at the end of each month

a true statement of the account in that bank and delivered it and all of the debit vouchers to Cavanaugh, but that Cavanaugh's official reports to the city clerk were false in that they showed a total greater amount on deposit in the banks than he had with them, that Cavanaugh's accounts in all of the other depository banks were correct, that no one doubted Cavanaugh's integrity until a few days before his tragic death, caused by a pending discovery of his official misconduct.

The referee found in Cause No. 210 that Cavanaugh's official account with the State Bank of Parsons as city treasurer was short in the sum of $24,949.83 on April 30, 1923, and in Cause No. 211 that Cavanaugh during the period from May 1, 1923, to July 20, 1926, covered by the two bonds of the National Surety Company, wrongfully extracted and withdrew from the State Bank of Parsons and used for his own personal purposes the total of $7,183.60, which was charged against the account of Cavanaugh as city treasurer in said State Bank of Parsons. He concluded and reported on the facts found that neither surety company was liable. When the report came in the plaintiff moved for judgment for the shortage found by the referee in each case. The defendant in each case asked the court to approve and confirm the referee's report in all respects. The plaintiff's motions were denied, to which action exceptions were saved. The court approved and adopted the report of the referee, dismissed the action in Cause No. 210 and entered judgment against appellee in Cause No. 211 for $65.00, which sum the referee found had come into Cavanaugh's hands as city funds which he did not deposit in any of the banks. To this action the plaintiff saved exceptions.

We think the court erred in matter of law in not sustaining plaintiff's motion for judgments. The Kansas statute, sections 60—2922 and 60—2924, provides that all or any of the issues in the action, whether of fact or of law or both, may be referred upon the written consent of the parties or upon their oral consent in court entered upon the journal, and that when the referee is to report the facts, the report has the effect of a special verdict. In Weil v. Neary, 278 U. S. 160, 49 S. Ct. 144, 146, 73 L. Ed. 243, the court said:

"Now, under section 649, R. S. [section 773, tit. 28, U. S. Code (28 USCA § 773)], if in a common law suit in a District Court the parties consent to refer the issues in accord with the local practice to a referee to

make findings of fact and report conclusions of law thereon, which the court approves and adopts, the appellate court may examine the findings and determine whether they support the judgment." See, also, section 700, Rev. St. U. S., now section 875, title 28, U. S. Code (28 USCA § 875).

It is true that in that case there was a written stipulation for the reference. A number of cases are referred to in support of the principle announced in the Weil-Neary Case, among them Shipman v. Straitsville Mining Co., 158 U. S. 356, 15 S. Ct. 886, 39 L. Ed. 1015. In that case Mr. Justice Brown, who delivered the opinion, said in his statement of the facts that the reference authorizing the referee to make findings of fact was by consent of parties in open court.

 We think the question whether the referee's findings of fact, adopted by the court, support the judgments, was properly saved. We cannot doubt there were breaches of the bonds by Cavanaugh. No one, other than he, was implicated by the referee's findings. It is persistently contended in brief and oral argument that because deposits in the State Bank gave the bank title to the funds thus deposited and created the relation of debtor and creditor between bank and depositor (a proposition we do not question), that Cavanaugh took the bank's money—not the city's money—when he appropriated from time to time the amounts that make up the shortage. Learned counsel would hardly contend that when a depositor receives money from a bank teller on his check, that the money is not the depositor's when he receives it. So here, Cavanaugh got money from the bank by checking against his official account, or in some other way, and when he thus obtained it he got the city's funds and embezzled them. He violated the conditions of the bonds in officially charging the city's account with sums the city did not owe, and in thus appropriating those sums making up the shortage, to his own private uses. He also violated the conditions of the bonds in the false official reports he made to the city; and in our opinion the city was damaged in the amounts stated because of these violations. Counsel for appellees say that if the banks had insisted upon Cavanaugh's checks being countersigned the account would not have been short and that the State Bank's failure to make that requirement renders it

liable. But it is no answer to the surety's liability that the city might sue the State Bank of Parsons and recover the whole loss. The referee did not find that the amounts constituting the shortage were withdrawn on Cavanaugh's checks as city treasurer. He said it was impossible to find just how he proceeded in that respect. He did find that Cavanaugh as cashier of the State Bank had a free hand over the keeping of its depositors' accounts; and whether the withdrawals were on his official checks without countersignatures, or otherwise, he induced the bank to charge the withdrawals against the city. When he obtained the amounts thus withdrawn he knew they were city funds and he converted them.

██ Much weight is attached to the failure of the banks to make monthly reports to the city clerk showing daily balances of the accounts, as required, it is said, by the 1918 contracts. Whether those contracts were continued in force during the time here involved is left in doubt by the referee's findings of fact; but assuming they were found to be in force we are unable to see how the failure of the banks to make those reports could discharge liability of Cavanaugh and his surety on the bonds. There were no statutory obligations on depository banks of cities of the first class to make monthly reports. The plaintiff city and the banks were free to make and unmake the stipulation relied on and to add others as might be agreed. Moreover, we do not believe it a good and permissible defense that some third party unnamed in the contract sued on failed to keep his contractual obligation touching the subject matter, when the validity of the contract sued on is not conditioned on the third party performing his contract.

██ Two other causes of action are set up in Case No. 211. One of them seeks to recover the cost of making a complete audit of Cavanaugh's accounts after his death, and the other a proportionate part of the annual premium paid by the city for Cavanaugh's bond in that case covering the time after his death. It is sufficient to say that we think they are both without merit.

For failure of the court to enter judgments for the amounts of shortage in each case the judgments below are reversed and remanded.