STATE, Respondent, vs. UNITED STATES FIDELITY & GUARANTY COMPANY and another, Appellants.

*November 12, 1932—January 10, 1933.*

For the appellants there were briefs by *Lines, Spooner &
Quarles,* attorneys for the United States. Fidelity & Guar-
anty Company, and *Douglass Van Dyke,* attorney for the
Fidelity & Deposit Company of Maryland, attorneys, and
*Louis Quarles* and *Maxwell H. Herriott* of counsel, all of
Milwaukee, and oral argument by *Mr. Quarles* and *Mr.
Herriott.*

For the respondent there were briefs by the *Attorney
General* and *Benjamin Poss* of Milwaukee, special counsel,
and oral argument by *Mr. Poss.*

WICKHEM, J. The major issue upon this appeal may
best be stated by setting forth defendants' contention with
respect to it. It is defendants' claim that the bonds are
not only statutory but official bonds; that the terms of the

relevant statutes are to be read into the bonds; that the statutes provide that the amount on deposit with any state depository shall not exceed its actual paid-up capital nor one-half the penalty of the bond filed by it, nor the amount prescribed by the board of deposits, if any be prescribed, except that for checking accounts deposits may be made to the amount of the paid-up capital and surplus; that moneys deposited in excess of the amount limited by statute are not received by the bank lawfully or as a state depository; that since the sureties only obligate themselves to pay money which is deposited in the bank as a state depository, there is no liability here for the excess over the sum permitted to be deposited.

At the outset it should be pointed out that the solution of this question in no way depends upon an application of the general principles of suretyship. Defendants assert no defense to the entire obligation based upon improper dealings with or concessions to the principal. It is simply claimed that a proper construction of the statutes and the bonds leads to the conclusion that the funds constituting an excess over the authorized deposit are without the scope or coverage of the contract of suretyship. Since the contract provides that defendants as sureties will pay to the plaintiff "all of such moneys which may be deposited with said The Capital City Bank of Madison, Wisconsin, as such state depository," it is apparent that the question involved here is quite narrow. If the excess is to be treated as something other than a deposit, or if it is not in the Capital City Bank as a state depository, then defendants have a valid defense as to the excess. If it is a deposit, and if it is deposited with the bank as a state depository, the ruling of the trial court was correct.

Sec. 14.44, sub. (1), Stats., provides:

"Every state depository, before it shall be entitled to receive any state moneys, shall file with the state treasurer

a good and sufficient bond to the state of Wisconsin, conditioned for the payment upon demand, to him or his order, free of exchange, at any place in this state designated by him, of all such moneys deposited with it. . . ."

Sec. 14.43 provides that a state banking corporation which has been approved by the board of deposits may, upon filing a bond as provided in sec. 14.44, become a state depository. Thus the process of becoming a state depository is fully complete when the board of deposits approves the institution and a proper bond is filed. Its status as a state depository seems to us to be fixed upon the happening of these two events. Sec. 14.46 prescribes the treasurer's liability. In substance the section permits the state treasurer, under the direction of the board of deposits, to deposit with any depository which has fully complied with the requirements of law, any state moneys in his hands or under his official control, "and any sums so on deposit shall be deemed to be in the state treasury, and said treasurer shall not be liable for any loss thereof resulting from the failure or default of any such depository without fault or neglect on his part or on the part of his assistant or clerks." The section has this further provision, however, upon which defendants' contention principally rests:

"However, the amount at any time on deposit with any depository shall not exceed its actual paid-up capital, nor one-half of the penalty of the bond filed by it, nor the amount prescribed by the board of deposits, if any be prescribed; provided, that for checking accounts such deposits may be made to the amount of the paid-up capital and surplus."

This constitutes a prohibition directed to the treasurer against exceeding a prescribed sum with respect to his deposits in any one bank. It is the defendants' contention that the deposits in excess of the sum permitted are not in the state treasury, nor are they in the state depository as

such; that the depository is an official, and that the depository bond is an official bond; that the excess deposit is not received by the bank as an official, and is not within the coverage of an official bond. This contention is ably defended, but it is our conclusion that it cannot be sustained. So far as the bank is concerned, it becomes a state depository by designation and by qualification as to bond. The treasurer may deposit in such a depository funds of the state. The limitation upon the amount of such deposit constitutes a prohibition that in our judgment does not prevent the excess from being in the bank as a state depository. The clear meaning of the statute is that while a deposit in excess of the amount prescribed may be wrongful and will not protect the state treasurer in case loss results to the state, it is nevertheless a deposit and a deposit in a state depository. This follows even though the prohibition be held to extend to the bank itself. This construction accords not only with the language of these sections but with their plain purpose. The purpose of the limitation is to protect the state against the likelihood of loss from depositing a greater sum in a given bank than the circumstances of the bank would warrant. By limiting the amount to that of the capital of the bank, or capital and surplus, the state, with respect to each bank, has a security, the face value of which is equal to the sum limited. It is considered that the legislative intent was to furnish additional protection to state funds and not to protect or benefit sureties upon depository bonds. It would require the clearest sort of language in the statute to justify a conclusion that a measure so plainly intended for the added protection of the state could be used to destroy one of the other securities exacted by the state for the protection of public funds.

In *State v. Pederson,* 135 Wis. 31, 114 N. W. 828, the state sued the sureties upon a bond in the penal sum of

$50,000. The defense was that the state board of deposits limited the amount to be deposited to the sum of $12,000, and that the treasurer thereafter unlawfully deposited a sum exceeding $24,000; that the lawful deposit of $12,000 had been fully repaid, and that the balance was unlawfully deposited so that the sureties on this bond were not liable for this balance. This court said:

"The state is not ordinarily estopped by acts of misfeasance on the part of its officers, nor does it contract with the sureties on an official bond given to it that other public officers shall perform their public duties faithfully. Sureties upon such bonds are presumed to know this principle and to consent to be bound by it. The principles governing the liabilities of sureties upon private bonds and contracts have no application so far as they conflict with this. *Hart v. U. S.* 95 U. S. 316. The gross amount deposited was within the penalties and terms of the bond and the sureties must perform their contract."

The *Pederson Case* is in point. While the amount there involved was not in excess of the capital of the bank, it was in excess of the amount permitted by the state board of deposits.

There appears to be no intended distinction in the statute, with respect to the prohibition upon the state treasurer, between depositing in excess of the capital or capital and surplus, the amount permitted by the state board of deposits, and a sum in excess of one-half of the penalty of the bond filed by it. If defendants' contention is sound, then funds in excess of any of these limitations could not be considered to be in the bank as a state depository. Furthermore, we think it is significant that the statute requires that the penalty of the depository bond filed by a state depository shall be twice the amount of the contemplated or permitted deposits. This evidences a statutory intention that the bond shall be large enough to protect the state up to the penalty

of the bond, in cases where the state treasurer has exceeded any of the limitations in the statute.

In *State v. Johnson,* 186 Wis. 59, 202 N. W. 319, the state was the plaintiff and the state treasurer one of defendants. The court there said:

"The provisions of sec. 14.46, which limits the amount which a state treasurer can legally deposit with an approved depository to the amount of the actual paid-up capital of the bank and one-half of the penalty of the bond filed by it, are general provisions and apply equally to all state depositories. No warrant can be given to the treasurer in any event to exceed these specific limitations. . . ."

It is our conclusion that this in no way militates against the conclusion arrived at here. It is concededly true that the treasurer is prohibited from exceeding the specified amount in his deposits, and we think that is all that was intended to be held in the *Johnson Case.*

While there is some language in this opinion which may give color to the argument that a distinction exists between violation of the directions of the state board of deposits and a violation of the outside limit of deposits as set by sec. 14.44 (1), this question was not before the court, and the case cannot be cited as authority to that proposition. What has been said here makes it unnecessary to consider the numerous citations by defendants of cases in which it is held that a surety on an official bond is liable only for the official acts of an officer. If the bank did not receive these deposits as an official or as a state depository, these cases apply, and the excess is without the coverage of the bond. Since we have concluded that the contrary is true, they can have no application.

It is next contended that facts are stated from which it can be concluded that the excess deposits were in fact loans to the bank, made for the purpose of saving it from insolvency. There is no allegation that the transfer of

these funds was in form anything but deposits—that they went into the bank in any different manner than any other deposits. Hence this contention must depend upon the soundness of one or the other of two propositions: first, that the impropriety or illegality of the deposits resulted in making them loans. This proposition is contrary to the court's conclusions, heretofore set forth. Second, that the motive of the state treasurer and other executive officers in depositing sums in excess of the statutory limit gives to a transaction that would otherwise be an ordinary deposit the character of a loan, because the deposits were not for the purpose of safekeeping the state's money, but of aiding the bank. We think that such a contention cannot be sustained. The statutory limitation takes no account of the motives of the treasurer or of anybody else. Its violation has the same effect no matter what the motive may have been.

The next contention of the defendants is based upon a statement contained in *State v. Johnson, supra.* Sec. 14.44 (3) provides as follows:

"(3) Every bank designated as a state depository shall renew its bond to the state treasurer every four years unless otherwise ordered by the state board of deposits. The board of deposits may also require new bonds at any time when they deem it necessary."

The comment in the *Johnson Case* that is claimed to be applicable is as follows:

"The phrase 'unless otherwise ordered by the state board of deposits' implies a situation where the board refuses to further recognize the bank as a state depository. Where no order is made by the board, and the bank submits a new bond which is approved, the bank enters upon a new term of four years as a depository. . . . Surety companies also may be perfectly sound when the bond is executed, and during the four-year period may suffer great losses so as to

impair their capital. It is this reason that the legislature evidently had in mind when it definitely limited the term of the bond to four years. While the statute requires the renewal of a bond, it clearly does not contemplate the continuance of the old bond. This is the construction placed upon the statute by the proper state officers and the board of deposits. Such a practical construction is of great weight and is oftentimes decisive."

The holding in the *Johnson Case* is merely to the effect that in the absence of any order after four years by the board of deposits, designating the bank as depository, or any order with respect to the bond of the depository, the fact that the bank furnished new bonds created a new term for the depository. There is nothing in this opinion which gives support to the claim that bonds which contain no time limit were intended by the statute to be terminated at the end of four years. Sec. 14.44 (3) is plainly stated by the *Johnson Case* to be for the protection of the state, and to contemplate the possibility that sureties and surety companies may, during the four-year period, suffer losses that will impair their capital. It is also difficult to see how this contention can be consistent with defendants' admission of liability as to $250,000, and their offers of judgment.

It is next contended by the defendants that the trial court denied defendants' motion to require plaintiff to bring in parties necessary for the complete determination of the controversy as required by sec. 260.19 (1). The persons claimed to be necessary to a complete determination of the controversy were: (1) Solomon Levitan, state treasurer, individually; (2) the Capital City Bank, principal on the bond; (3) Thomas Herreid, as acting banking commissioner in charge and possession of the assets of the bank. This motion is based upon the provisions of sec. 260.19 (1), which provides:

"(1) The court may determine any controversy between the parties before it, when it can be done without prejudice

to the rights of others or by saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties, or any persons not parties to the action have such interest in the subject matter of the controversy as require them to be made parties for their due protection, the court shall order them to be brought in; and when in an action for the recovery of real or personal property a person not a party to the action, but having an interest in the subject thereof, makes application to the court to be made a party it may order him to be brought in by the proper amendment."

None of these parties are necessary to a complete determination of this controversy. By the terms of the bonds the sureties agreed to pay to the state, on demand, upon default of the bank, all of the deposits. It is not an indemnity contract. Upon the bank's default it is not necessary for the state to establish a loss in order to recover. It is not claimed that failure to join these parties will in any manner prejudice their rights. Reliance is had upon *Washburn v. Lee,* 128 Wis. 312, 107 N. W. 649. This was an action to recover upon the official bond of the town treasurer and his sureties. It was claimed that the treasurer had unlawfully diverted to his own use a portion of the funds officially in his hands. Upon the trial the controversy was limited to two payments, one made to the Northern State Bank and the other to the Bayfield County Bank, it being the contention of the town that these orders were for an unlawful purpose and that the payments were unlawful and the treasurer and his bondsmen liable. The bond in that case was presumably in compliance with sec. 19.01 (2) and was an indemnity bond. It was held that these payments were illegal, and that if the recipients of them were solvent and liable they ought to repay the sums rather than that the sureties be required to indemnify the town for the loss; or, if the latter did pay, they ought to be subrogated to the right of the town to reclaim its funds from the unlawful

holders. The court held that "before the joining of law and equity jurisdiction in the same court this situation would have presented a very persuasive case for a court of equity to have enjoined further prosecution of this action until plaintiff had exhausted its remedy against the recipients and holders of its money," and that under the Code the same relief is available under sec. 260.19 (1) by bringing in such persons as parties necessary to the complete determination of the controversy.

There are several material differences between the case of *Washburn v. Lee* and the present situation. In the first place, the bond in the *Washburn Case* was an indemnity bond, upon which there could be no recovery except for such loss as the town had suffered, while here the agreement was to pay on demand all moneys on deposit. In the *Washburn Case* the town was required to establish the illegality of the payments as a condition of recovery. This required an examination of the same facts and a determination of the same issues as would later have to be considered and determined in an action between the sureties and the recipients of the payments. In other words, there was one controversy, and that concerned the validity of the payments. This could not be completely determined without the presence as parties of the recipients of the payments. In the event the actions against the sureties by the town and that by the sureties against the recipients were tried separately, it might easily happen that the sureties would be unsuccessful in each action. That is not true here. The validity or invalidity of the acts of the state treasurer in depositing, or those of the bank in receiving the deposits, in no way affect the surety's liability to the state.

This is an ordinary action at law to recover upon the contract of suretyship, and no persons other than the contracting parties are necessary to a complete determination of

the controversy. Under these circumstances plaintiff cannot be compelled to bring in parties other than those it has chosen to sue. *Taylor v. Matteson,* 86 Wis. 113, 56 N. W. 829. Reliance is also had upon the case of *Patitucci v. Gerhardt,* 206 Wis. 358, 240 N. W. 385. In that case plaintiff brought action to recover for injuries to his automobile. It appeared that he carried collision insurance covering all his loss but $75, and that this loss had been paid by the insurance company. It was held that the payment operated as an assignment *pro tanto* to the insurer of the cause of action for tort, and that due to the fact that a single cause of action was owned by several persons as a result of parcel assignments, that the presence of all the persons owning the cause of action was necessary to a complete determination of the controversy. No such situation exists here. It is not claimed that the state does not completely own its cause of action.

It is further contended that the court erred in failing to interplead Solomon Levitan under sec. 260.19 (3), in order to permit the defendants to assert their right of recovery over against him. This subsection permits the court, in its discretion, to order a third person to be made a party where a defendant shows by affidavit that if he be held liable he will have a right of action against this third party. There was no abuse of discretion here. If there is any liability on the part of Mr. Levitan to these sureties, and we see no occasion for determining this question here, it certainly is not what is usually denominated a "liability over." Mr. Levitan, neither individually nor as state treasurer, had any contractual obligations to these sureties. He was not a principal on the bonds in suit. There is no right of indemnity in the sureties as against him. If there is a liability on his part, individually or officially, it certainly does not arise out of this contract of suretyship. This being true,

we fail to see how the court has abused its discretion in declining to have him made a party. It is difficult to see, under the doctrine of *Liebhauser v. Milwaukee E. R. & L. Co.* 180 Wis. 468, 193 N. W. 522, how this claimed liability of Levitan, and the relief that it is asserted defendants are entitled to against him, could involve or affect plaintiff's primary right. Under such circumstances it certainly would not be an abuse of discretion to refuse to interplead Mr. Levitan. In the *Liebhauser Case* it is said:

"Plaintiff should have a right to bring her action and obtain an adjudication of her rights without being compelled to become a mere observer in a contest between two defendants which in no way whatever concerns her."

In *Bakula v. Schwab,* 167 Wis. 546, 168 N. W. 378, this court said:

"Immemorially it has been the right of the plaintiff to make his own election in the matter of joining tortfeasors as defendants. It has been his privilege to institute his action against one or part or all tortfeasors responsible to him. We can see no reason why this venerable rule should be changed, nor why the plaintiff should be compelled to involuntarily litigate with parties not of his own choosing."

For the foregoing reasons the judgment and orders must be affirmed.

*By the Court.*—The judgment and orders are affirmed.