**HOWARD et al. v. UNITED STATES et al.**

No. 5756.

Circuit Court of Appeals, Seventh Circuit.

Jan. 8, 1937.

Rehearing Denied Jan. 29, 1937.

244

EVANS, Circuit Judge, dissenting.

———◆———

Julius Moses, Lloyd Heth, and William P. Smith, all of Chicago, Ill., for appellants.

George B. McKibbin, Walter E. Beebe, and Hamilton K. Beebe, all of Chicago, Ill., for appellees.

Before EVANS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

LINDLEY, District Judge.

This is an appeal from a judgment of the District Court entered in a consolidated cause in which were merged three suits brought upon several bonds of Howard, as receiver and trustee in bankruptcy, and Continental Casualty Company, as surety, to recover moneys held by such trustee and receiver in bankruptcy on deposit in the Phillip State Bank of Chicago at the time it closed in 1932. Following verdict of the jury, judgment was rendered for $225,740.-45.

The condition of each of the trustee's bonds was as follows: "Now, therefore, if the said Sam Howard, Trustee as aforesaid, shall obey such orders as said Court may make in relation to said trust, and shall faithfully and truly account for all the moneys, assets, and effects of the estate of said Bankrupt, which shall come into his hands and possession, and shall in all respects faithfully perform all his official du-

ties as said Trustee, then this obligation to be void; otherwise to remain in full force and virtue."

That of each of the receiver's bonds was as follows: "Now, therefore, the condition of this obligation is such, That if the said Sam Howard shall faithfully discharge the duties of his trust as such Receiver, and shall well and truly account for all moneys and property that shall come into his hands, and shall abide by and perform all things which he in said order is instructed to do, or shall hereafter be by the Court commanded to perform, then this obligation shall be void, otherwise to be in full force and effect."

The complaint charged that Howard negligently, carelessly and improperly deposited in said bank, in his name as receiver and trustee for bankrupt estates, the funds in controversy; permitted said moneys to remain on deposit, and, during said period, deposited further moneys and opened deposit accounts for new estates, when ordinary care and prudence would have required that he desist from such practice and take care that the total deposits in all the estates should not exceed in amount the penalty of the depository bond of $50,000.

The case was tried upon the theory that liability of appellants on the bonds was to be resolved by a determination of whether, under the evidence, Howard had been negligent in making and maintaining deposits of estate funds in the bank. It was the position of appellees, adopted by the court in the trial, that such negligence, if proved, was a breach of the conditions of each of the bonds; and the court, in its charge to the jury, submitted the question of liability upon this premise. It advised the jury that the trustee was bound to exercise reasonable care—the care of a reasonably prudent man, acting as a fiduciary of trust funds.

Appellants contest vigorously the correctness of this theory. They assert that there is no liability upon the bonds because of any lack of due care or diligence upon the part of the trustee, other than the express conditions themselves import. It becomes incumbent upon us, therefore, to determine the extent of liability upon the written instruments and whether the court was in error in its conception of the legal obligation of the principal and surety upon official bonds.

Howard had, for a number of years, been appointed receiver and trustee in bankruptcy cases in the District Court. He

formerly kept deposits in the Central Trust Company, one of the designated official depositories. In July, 1930, one Beutel, who had been an official of the Central Trust Company, became president of the Phillip State Bank, on the north side of Chicago, which had been in business for some fifteen years. It was associated in some degree with the Central Trust Company. Beutel suggested that Howard make deposits in the Phillip Bank. Later that bank applied for designation as an official depository of bankruptcy funds, and the court entered an order designating it as such, requiring a bond of $50,000, as such depository, to be executed and filed with the court. The bank qualified under this order, and thereafter from time to time Howard deposited moneys in the bank until it closed in 1932.

In December, 1930, the bank's resources were about $4,600,000, deposits $3,600,000, capital stock, surplus, and undivided profits $752,000. In the middle of April, 1931, within five days, four banks in the same general community closed their doors, and at that time depositors of the Phillip Bank withdrew $1,000,000 in deposits. The president telephoned Howard and other large depositors of the bank and told them not to feel concerned; saying that the bank was safe and sound and that the Central Trust Company was advancing all cash necessary to meet demands. The Phillip Bank at that time borrowed from the Central Trust about $1,000,000. Two months later this loan had been repaid and deposits were beginning to return to the bank. On June 7, 1931, in an attempt to save its depositors, the National Bank of the Republic merged with the Central Trust Company, and the Foreman State National Bank was taken over by the First National Bank. Following this, on the north side of Chicago, five banks closed, and a new run began on the Phillip Bank and about $500,000 was withdrawn.

Shortly thereafter the court requested of all trustees a statement of their bankruptcy estate deposits. Howard filed a report showing $373,000 deposited in his official accounts in bankruptcy in the Phillip Bank. The District Court, on June 11, directed all receivers to file every three months an official statement showing deposits in banks. Evidence offered, but refused by the court, disclosed that the National Bank of the Republic had similar deposits of $1,103,000, with a depository bond of $50,000; and the Foreman Bank $331,000, with a depository bond likewise of $50,000.

The quarter-annual statement of the Phillip Bank issued in early July showed that the deposits had increased after March 25 about $1,300,000.

The then existing relationship between Howard and the bank continued through the summer and fall of 1931. In October the bank's deposits were $2,335,000. The total resources had decreased about $196,-000—from $3,660,000 to $3,464,000. The situation did not change materially from September, 1931, until June, 1932. There were many withdrawals about Christmas of 1931. On June 18, 1932, the Devon Trust & Savings Bank closed. A run started on the Phillip Bank; on the following Monday, June 20, it continued, and on June 21 the bank closed. It has since been in the hands of a receiver.

The proof showed that Howard was a borrower at the bank to the extent of some $9,000. This evidence was offered on the theory that the existence of such loans prevented Howard from being a free agent, in depositing official funds. These loans, he said, were necessary to furnish him with working capital in handling estates, to supply constantly recurring petty expenses for which he received credit and make reimbursement upon report to the court and approval thereof.

It appears that Howard knew of the runs that were made upon the bank. He borrowed funds, as he said, to effectuate an efficient administration of the estates. With this knowledge, his deposits were not withdrawn, and some new accounts were created. These facts, it is argued, placed him in a position where failure to act was a breach of the diligence and care which he should have exercised as a fiduciary.

We must keep in mind that we are not concerned here with the question of liability of Howard himself to the estates for which he was fiduciary. The question presented to us is the much more narrow one of whether the condition of the bonds sued upon has been broken. We are dealing, not with an action in tort against the trustee, but with the legal liability of a principal and a surety upon an express contract.

The obligors bound themselves to pay losses which might arise (1) from failure of Howard to obey an order of the court; (2) from failure upon his part faithfully and truly to account for the moneys of the estates; and (3) from failure by him faithfully to perform "his official duties as said Trustee." The obligation on the receiver's

246

bonds was, in legal intendment, the same as that upon trustee's bonds.

There is no evidence of breach of condition (1). There is no proof of violation of any order of the District Court or of any loss to an estate arising from disobedience of any court order.

It is contended that the second condition was broken; that Howard did not faithfully and truly account for the moneys of the estates. This language imposes upon the trustee the duty to make honest and accurate reports or accountings of estate funds as required by law, and to dispose of the funds so reported or accounted for in accordance with the law. There is no proof that Howard failed to make or render reports or accounts according to law or that his disposition of the funds, as thus reported and accounted for, was contrary to law, unless it can be successfully maintained that it was his duty to discover an alleged dangerous banking condition and to remove the funds beyond danger therefrom, a phase we shall hereafter discuss. There is no charge of defalcation, embezzlement or other improper distribution of funds.

There remains to be considered the third proviso of the conditions. This is of wide import, and liability attaches thereunder for any loss which may result from a failure faithfully to perform official duties. It is provided under section 47 of the Bankruptcy Act, as to the official duties of the trustee with relation to the handling of funds, that the trustee shall—

"Deposit all money received * * * in one of the designated depositories." 11 U.S.C.A. § 75 (a) (3).

"Disburse money only by check or draft on the depositories in which it has been deposited." 11 U.S.C.A. § 75 (a) (4).

"Furnish such information concerning the estates * * * and their administration as may be requested by parties in interest." 11 U.S.C.A. § 75 (a) (5).

"Keep regular accounts showing all amounts received and from what sources and all amounts expended and on what accounts." 11 U.S.C.A. § 75 (a) (6).

"Lay before the final meeting of the creditors detailed statements of the administration of the estates." 11 U.S.C.A. § 75 (a) (7).

"Make final reports and file final accounts with the courts fifteen days before the days fixed for the final meetings of the creditors." 11 U.S.C.A. § 75 (a) (8).

"Report to the courts, in writing, the condition of the estates and the amounts of money on hand, and such other details as may be required by the courts, within the first month after * * * appointment and every two months thereafter, unless otherwise ordered by the courts." 11 U.S.C.A. § 75 (a) (10).

General Order 29 in bankruptcy (11 U.S.C.A. following section 53) provides that the trustee shall distribute money only by check countersigned by a judge or referee or clerk, as designated. The rules of the District Court provide that the referee shall countersign all checks. The narrow question presented, then, as we view it, is whether, assuming for disposition of this inquiry that Howard was negligent in making and maintaining deposits in the Phillip Bank, such negligence was a violation of his official duties, and whether it created a liability against a surety for performance only of such official duties.

A surety on such a bond undertakes that the officer will faithfully perform the duties stated and defined by law as pertaining to his office. He does not consent to become liable for any act in which the officer may become engaged in the pursuit of his office. Otherwise stated, an officer may so act as to render himself personally liable as a matter of general law, but it does not follow necessarily that his official bondsmen are liable. The liability of sureties is limited to that for breach of official duties of the principal, and does not include an undertaking against every act that the official may perform or every failure to act of which he may be guilty. City of Salisbury v. Lyerly, 208 N.C. 386, 180 S.E. 701; District of Columbia v. Petty, 229 U.S. 593, 33 S.Ct. 881, 57 L.Ed. 1343; Orton v. City of Lincoln, 156 Ill. 499, 41 N.E. 159; Campbell v. American Bonding Co., 172 Ala. 458, 55 So. 306; City of Parsons v. Fidelity & Deposit Co. (D.C.) 29 F.(2d) 417, reversed on other grounds (C.C.A.) 43 F.(2d) 315. Thus in City of Wilkes Barre v. Rockafellow, 171 Pa. 177, 33 A. 269, 270, the court said: "The terms must receive a reasonable construction, and, if there has been no violation of official duty, there has been no breach of the condition for which the sureties can be required to account. It follows, necessarily, that for an extraofficial act or undertaking of the principal the sureties cannot be held responsible. 2 Am. & Eng.Enc.Law, 467b. And if the ordinary course of official action is departed from, for the benefit and at the instance of the

party to whom the bond is given, and loss results, the sureties are not, in law or morals, responsible for such loss, unless they assented to the departure from the ordinary course of official action which made the loss possible."

█ Contracts of sureties on official bonds are strictissimi juris. The instrument is required by a statute which defines its terms, and the law of the office is a part of the contract. The surety guarantees the faithful discharge of all duties properly pertaining to the office, and the extent of such liability can be determined only from the bond and from the statutes creating the office and defining the terms of the bond. See Lowe v. City of Guthrie, 4 Okl. 287, 44 P. 198. That these bonds are such statutory official bonds appears from the provisions of section 50b of the Bankruptcy Act (11 U.S.C.A. § 78(b), as follows: "Trustees, before entering upon the performance of their official duties, and within ten days after their appointment, or within such further time, not to exceed five days, as the court may permit, shall respectively qualify by entering into bond to the United States, with such sureties as shall be approved by the courts, conditioned for the faithful performance of their official duties."

The trustee's official duties are defined elsewhere in the act as above indicated. All funds coming into his hands must be deposited in a designated depository; and he can withdraw no part thereof except by order of court or upon check countersigned by a referee, pursuant to an order of court authorizing the same. Obviously he would become liable upon his bond if he should deposit estate moneys in some bank other than a designated depository. But can it be said that under his official duties, with which alone we are dealing, he is bound to investigate the financial condition of a designated, qualified depository named by the court to whose jurisdiction he is subject?

[3-7] There are some cases where the courts have imposed an absolute liability for public funds upon the principal and the surety; but in none of these, we believe, did a situation exist such as confronts us here. In the case of a common-law fiduciary or a quasi-public official, whose actions are not governed by statute in the same sense as a trustee in bankruptcy, a failure to exercise ordinary care and prudence creates liability.[1] But in none of the cases cited in this connection was the officer acting under a legal depository system such as controls in bankruptcy. In all cases which involve some depository system set up by statute for the safekeeping of funds, we find it characteristically true that there is a divided authority over the funds so in safekeeping, lodged in different persons. The fiduciary who receives the funds and is invested with disbursing power is not permitted to retain the funds in his own possession; rather, he is required to deposit them in a depository designated by some official other than himself for that purpose, and he can not properly make deposits or place funds elsewhere. The power to select and designate the depository, and to revoke such action, is lodged with some one other than the officer who receives the funds. These features, with the concurrent division of power, have led the courts to conclude that the intent of the legislative body in such statutes is to impose no liability on the depositing officer who complies with the law in making his deposits, in the event of a loss through the closing of a depository. If he has authority to select the depository, and no other body has any power of such selection, he is not relieved. State v. Bobleter, 83 Minn. 479, 86 N.W. 461. And depositing estate funds in a bank will not save a trustee from the illegality of deposit if the bank is not a designated depository. In re Potell (D.C.) 53 F.(2d) 877; In re Hoyt (D.C.) 119 F. 987. It has been held that he is not relieved, even though the court direct him to

[1] Barney v. Saunders, 57 U.S. (16 How.) 535, 14 L.Ed. 1047; Anguera v. Yturria, 80 F.(2d) 57 (C.C.A. 5); Carey v. Safe Deposit & Trust Co. of Baltimore, 168 Md. 501, 178 A. 242; Neff v. Harmon, 145 Okl. 114, 291 P. 518; In re Stone's Assignments, 220 Iowa, 1341, 264 N.W. 604; In re Kohler's Estate, 15 Wash. 613, 47 P. 30, 55 Am.St.Rep. 904; In re Workman's Estate, 196 Iowa, 1108, 196 N.W. 35; Hart v. Savary, 114 Fla. 41, 152 So. 705; In re Olson's Estate, 206 Iowa, 706, 219 N.W. 401; Harper v. Betts, 177 Ark. 977, 8 S.W.(2d) 464, 60 A.L.R. 484; In re Welch's Estate, 100 Mont. 47, 45 P.(2d) 681; Wilson v. People, 19 Colo. 199, 34 P. 944, 22 L.R.A. 449, 41 Am.St.Rep. 243; State v. Copeland, 96 Tenn. 296, 34 S.W. 427, 31 L.R.A. 844, 54 Am.St.Rep. 840; Town of Danbury v. Riedmiller, 208 Iowa, 879, 228 N.W. 159; State v. Gramm, 7 Wyo. 329, 52 P. 533, 40 L.R.A. 690.

make the deposit in a nondesignated bank. Huttig Mfg. Co. v. Edwards (C.C.A.) 160 F. 619; Reynolds Tobacco Co. v. A. B. Jones Co. (C.C.A.) 54 F.(2d) 329. But he needs no further order to protect him if he deposits in a designated depository. In re Singer Furniture Corp. (D.C.) 47 F.(2d) 780. Nor is the size of the bond a warning to him of the amount he may deposit in a depository. City of Billings v. Mass. Bonding & Ins. Co., 88 Mont. 91, 290 P. 246. This court said, in Illinois Surety Co. v. United States, 226 F. 665, 667:

"In support of the first contention, it is urged that, as the court may from time to time order an increase in the amount of the bond, every depositor, before making his deposit, must ascertain whether the amounts then owing might exhaust the penalty, and, in that event, he must see to it that an increase of the bond is ordered, if he desire to share in the protection.

"The statement of the proposition carries its own refutation. No such limitation is expressed in, and none assuredly will be implied from, the language either of the statute or of the bond itself."

■ Designated depositories are themselves officers of the court. State of Kansas v. U. S. Fid. & Guar. Co., 81 Kan. 660, 106 P. 1040, 26 L.R.A.(N.S.) 865; State v. U. S. Fid. & Guar. Co., 210 Wis. 178, 246 N.W. 434, 90 A.L.R. 670: Miller v. Batson, 160 Miss. 642, 134 So. 567; Perkins v. State, 130 Miss. 512, 94 So. 460; Board of County Com'rs v. Mason, 38 Wyo. 1, 264 P. 93. But funds deposited with them are withdrawn from custodia legis and become simple debt claims against the banks. Gardner v. Chicago Title & Trust Co., 261 U.S. 453, 43 S.Ct. 424, 67 L.Ed. 741, 29 A.L.R. 622; In re Ecklund, 75 F.(2d) 747 (C.C.A.7).

In Town of Hamden v. American Surety Co. (D.C.) 9 F.Supp. 733, 738, the court aptly said: "It thus is inherent in the federal system that federal funds coming into the hands of a receiving officer, when once deposited with a duly designated depository of the United States, are in effect in the treasury of the United States and hence no

longer in the possession or custody of that receiving officer. See Branch v. U. S., 100 U.S. 673, 25 L.Ed. 759. And the same situation exists with reference to public funds on deposit with a federal depository awaiting disbursement by an official disbursing officer. Thus, in the ordinary case no question can arise as to the liability of a federal receiver of public moneys or of a federal disbursing officer, for funds deposited with a duly designated depository." To the same effect is City of Scranton v. Aetna Casualty & Surety Co., (D.C.) 11 F.Supp. 986.

■ We agree that when such depositories have been designated according to law, the depositing officer and his bondsmen are not liable upon an official bond for the loss of funds deposited therein resulting from the closure of the depository, so long as the depositor deposits in an institution designated by the court. Compliance with what the Legislature or the court directs furnishes protection to an obedient officer. Cases thus holding are cited in the footnote.[2] What the appellees ask "is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably (possibly) by inadvertence, may be included within its scope. To supply omissions transcends the judicial function." Wallace v. Cutten, 298 U.S. 229, 56 S.Ct. 753, 754, 80 L.Ed. 157; Iselin v. United States, 270 U.S. 245, 250, 251, 46 S.Ct. 248, 70 L.Ed. 566. Some states expressly exonerate the depositing officer from liability by statute. A specific example is Bowers v. State, 70 Ohio St. 423, 72 N.E. 1155.

■ This trustee was bound to deposit, and did deposit, his funds in a qualified depository designated by the court. Under the Bankruptcy Act he could withdraw no part of any of the deposits and distribute no funds therefrom except upon an order of court and upon check duly countersigned by a referee. It follows, therefore, that so far as his official duties were concerned, and so far as the liability of the surety for his official acts is concerned, he fully complied with the law, and there was no breach

---

[2] Hinton v. State of Oklahoma, 57 Okl. 777, 156 P. 161; American Surety Co. of N. Y. v. City of Thomasville, 73 F.(2d) 584 (C.C.A. 5); Edgerton Independent Consol. School District v. Volz, 50 S. D. 107, 208 N.W. 576; Perley v. County of Muskegon, 32 Mich. 132, 20 Am.Rep. 637; Board of Education v. Nelson, 33 N.D. 462, 157 N.W. 664; Commonwealth v. Godshaw, 92 Ky. 435, 17 S.W. 737; Magee v. Brister, 109 Miss. 183, 68 So. 77; Board of Finance v. First National Bank, 71 Ind.App. 290, 124 N.E. 768; Miller v. Batson, 160 Miss. 642, 134 So. 567; City of New Haven v. Fresenius, 75 Conn. 145, 52 A. 823; Joint School District No. 105 v. First National Bank, 125 Okl. 243, 257 P. 318.

of the third condition of the bond. It was the duty of the District Court to direct a verdict for the defendants, rather than to submit to the jury the question as to whether the trustee was negligent in making deposits in a designated depository.

Howard's knowledge of the condition of the bank and his personal loans there, are to our mind facts immaterial in an action upon these bonds. They constitute no breach of the conditions. What their legal effect may be in an action against the trustee personally, we are not called upon to decide.

In view of our conclusions, the discussion of other features is unnecessary.

The judgment of the District Court is reversed, with directions to grant a new trial and to proceed in accordance with this opinion.

EVANS, Circuit Judge (dissenting).

I find myself impelled to dissent on the ground that the record shows the obligation of appellant's principal was breached. The trustee's (appellant's) obligations, which measured the surety's liabilities, were to (a) obey all court orders, (b) account for moneys of the estate, and (c) perform all official duties as trustee.

It is not possible to construe the measure of liability of a trustee set forth in (c) as being the same as imposed by (a) or (b).

What then were the *official duties* of the trustee?

They were obviously not restricted to carrying out the express orders of the court nor were they limited to the affirmative duties specified in the statute and confined to keeping accounts. I can not agree that a trustee in every case meets the requirements of his official duties when he deposits the money by him collected in *any* bank named as a depository.

In other words, a trustee is one who occupies a fiduciary relation towards the creditors of the bankrupt. His is a position of trust. When the trustee, Howard, arranged with the bank to get a personal loan for a substantial sum and in return agreed to deposit the moneys which belonged to the creditors of the various estates for which he was trustee in the bank that loaned him personally the money, he failed in his plain duty to the creditors. He could not avoid the consequences of that failure if loss resulted through a failure of the bank, by showing that the bank wherein the money was deposited was a bank of deposit.

I can not agree that the personal loan to the trustee is of no moment in this case. It may not be determinative, it is true, but such a loan created a conflict of interest between Howard, the borrower, and Howard, the trustee. It undoubtedly influenced him, as trustee, when it came to keeping the creditors' money in the bank and also accounts for his not distributing the funds to creditors as promptly as he should have done. At least, any fact finding body might well have so found. Why didn't Howard distribute the large sums he had on deposit among the creditors to whom they belonged? With creditors sadly in need of the dividends, with the danger of bank failures facing him on all sides, with *all* of his deposits in *one* bank, the total amount of which was nearly ten times the amount of the bond which the bank executed, it was most natural for a *diligent* trustee to distribute the money to those entitled to it as *fast* as *possible*. On the other hand, distribution of the cash would have reduced the bank's deposits, which were already at the vanishing point. It was to the bank's interest to keep the money on deposit. Howard, as trustee, was the only substantial depositor left. Can reasonable men differ as to the influence and effect of that personal loan on Howard's action?

In performing the official duties mentioned in the bond, where there are many banks of deposit in the district and banks are closing almost daily, the plain duty, it seems to me, of the trustee was to select the bank which he would have chosen were he depositing his own money. Certainly no lesser degree of responsibility for a trustee may safely be announced. It is quite impossible, upon the record before us, to say that Howard used the same diligence in depositing *all* the moneys of *all* the accounts in this one little out-lying bank where deposits had been greatly reduced that he would have used had he been handling his own funds. In fact, it is the conclusion of common sense that as an individual he would not have deposited any part of it there in the first place, and he would not have left it there when the constant crashing of banks directed thoughts of those with funds to the security of their deposits. I cannot believe Howard would have left the money in this bank save for the existence of his own unsecured note to the bank.

Much stress is placed upon the fact that the trustee sought the advice of the then District Judge and from him secured oral

approval of his action in leaving the creditors' money on deposit in the Phillip State Bank. Doubtless, protection might have been secured through court action especially if the orders were made on notice to creditors.

It is significant, however, that no claim is made that a written order was entered or that a minute of any oral order was made by the clerk. While a written order was perhaps not necessary, it would have established the fact far more conclusively. As it now stands the jury might well have doubted or disbelieved Howard's story. The judge, who it is asserted gave his approval, did not testify, and it is not even claimed that in approving Howard's continued deposit in this bank the District Judge knew of the personal loan of said bank to Howard or that *all* of the funds of *all* the estates wherein. Howard acted as trustee were thus deposited. Nor did he know that the total deposits exceeded the bank's bond nine times.

In a matter of such importance we can hardly accept as conclusive on the question of trustee's performance of duty the statement of the existence of an ex parte order alleged to have been made by the court, which order was neither reduced to writing nor a minute made of it by the clerk, and which involved nearly a half million dollars and dealt with the performance of an official duty. In the entry of such an order the creditors were interested, and it is not imposing too strict a responsibility on the trustee to hold that a court order should afford him protection only when made on notice to creditors. As a proper protection to. the court, who without it may be easily misrepresented, and also in fairness to the court's appointee, who is entitled to protection when the future realizations prove false the present expectations, such orders should be in writing and entered only upon notice to parties who have appeared.

Appellant's statement and argument that the note which he gave to the bank was for moneys borrowed by him in order to permit him to more effectively administer the bankrupts' estates entrusted to his care and that all other individuals who are regularly appointed trustees in bankruptcy by the District Judges of the Northern District of Illinois borrow money from the banks and give their unsecured notes therefor, with the understanding that the money coming into the trustee's possession will be deposited in said bank, must be rejected because of lack of factual support. More-over, if all the other trustees are so obtaining personal credit on the strength of the use (or misuse) of their official position, the present affords a good opportunity to put a stop to the practice by a pronouncement of judicial, unequivocal condemnation thereof.

My conclusion is that the District Court properly submitted to the jury the question of fact arising out of Howard's alleged breach of official duties for which appellants were liable as surety.